MARY A. TALLINGER, Appellant, *v.* AUSTIN MANDEVILLE et al., as Executors, etc., Respondents.

113  427|
119  547|
    113  427|
d161  553|

In pursuance of an ante-nuptial agreement, T., defendants' testator, executed to plaintiff, his wife, an instrument, by which he agreed to pay to her $10,000 at his death, provided she lived with him as his wife up to that time and faithfully performed the duties of that relationship. Subsequently the parties executed another instrument, by which plaintiff, in consideration of $5,000 then paid to her by her husband, released and canceled the former agreement. In an action upon the original agreement, *held,* that while the later one, so long as it remained executory, could not have been enforced, yet having been executed, in the absence of any allegation of fraud, plaintiff was not entitled to be relieved therefrom; that having released her husband's obligation she could be reinstated in her rights under it only by a suit in equity instituted for that purpose.

The law will not interfere at the instance of either party to relieve him from an illegal contract, so far as it has been executed.

The defendants, aside from setting up the later agreement, alleged in their answer a violation on plaintiff's part of the conditions precedent contained in the prior one. *Held,* that even if she had been overreached and thus induced to execute the release, she was not entitled to maintain the action until she had repudiated the later agreement and tendered back the money paid.

Reported below, 48 Hun, 152.

(Argued March 28, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the last Tuesday of March, 1888, which affirmed a judgment in favor of defendants, entered upon an order nonsuiting the plaintiff on trial.

The nature of the action and the material facts are stated in the opinion.

*P. Chamberlain, Jr.,* for appellants. The contract of separation is an illegal one and against public policy and good morals, and being made between husband and wife, with no intervening trustee, was not binding upon the plaintiff, and it was, therefore, error for the court to nonsuit plaintiff. (*Saratoga Co. Bk.* v. *King,* 44 N. Y. 87; *De Burski* v. *Paige,* 36 id. 537;

*Thayer* v. *Rock*, 13 Wend. 53; *Crawford* v. *Morrell*, 8 Johns. 253; *Dow* v. *Way*, 64 Barb. 255; *Friedman* v. *Bierman*, 25 Week. Dig. 526; 43 Hun, 387; *Kaufman* v. *Schoefel*, 37 id. 140; *Rogers* v. *Rogers*, 4 Paige, 516; *Richardson* v. *Crandall*, 30 How. Pr. 134; *Bertles* v. *Nunan*, 92 N. Y. 152; *Carson* v. *Murray*, 3 Paige, 483; *Curry* v. *Curry*, 10 Hun, 366; *Van Order* v. *Van Order*, 8 id. 315; *Perkins* v. *Perkins*, 62 Barb. 531; 1 N. E. Rep. 41; *White* v. *Wager*, 25 N. Y. 328; *Dupre* v. *Rein*, 56 How. Pr. 230; *Will of Smith*, 95 N. Y. 516; *Cornell* v. *Cornell*, 75 id. 91; *Carpenter* v. *Soule*, 88 id. 256; *Fisher* v. *Bishop*, 13 N. Y. State Rep. 466.) It was not necessary, under all the circumstances of this case, for the plaintiff to repay or offer to repay the amount received under the illegal contract before bringing her action. (*Pierce* v. *Wood*, 3 Foster [N. H.] 519; *Gould* v. *Cayuga Nat. Bk.*, 86 N. Y. 75.)

*W. A. Sutherland* for respondent. If the agreement itself, whereby plaintiff received this $5,000, was that which created her separate estate, then the agreement is one to which she must stand. (*Herrington* v. *Robertson*, 71 N. Y. 280; *Cashman* v. *Henry*, 75 id. 103–115; *Jones* v. *Fleming*, 104 id. 418, 433.) The contract of July 20, 1882, whereby this plaintiff received $5,000 in cash, was valid and binding, although made between husband and wife, without the intervention of a trustee. (*Brace* v. *Gould*, 1 T. & C. 226; *Seymour* v. *Fellows*, 77 N. Y. 178; *Dewey* v. *Durham*, 19 Week. Dig. 47; *Bodine* v. *Killeen*, 53 N. Y. 93; *Knapp* v. *Smith*, 27 id. 277; *Sherman* v. *Scott*, 27 Hun, 331; *Sheldon* v. *Clancey*, 42 How. 185; *Armitage* v. *Mace*, 96 N. Y. 538.) It is no answer to say that some parts of the agreement were contrary to public policy, and that the plaintiff may, therefore, retain all of the benefits received by the agreement and repudiate its obligations. (*Desbrough* v. *Desbrough*, 29 Hun, 592.)

Earl, J. On the 26th day of September, 1881, the plaintiff was married to the defendant's testator, Godfrey Tallinger,

and they commenced to live together as husband and wife. On the eighteenth day of February thereafter the testator executed the following instrument:

" Whereas, I, Godfrey Tallinger, did on the 26th day of September, 1881, marry my present wife, Mary Tallinger, and did then, in consideration of said marriage, agree to secure to her the payment of ten thousand dollars upon my death, provided she would live with me as my wife until said time, and should in all things at all times perform faithfully the duties of a wife, and take such care of me and my household as I should request, and as should be proper and reasonable. Now, therefore, I do, in consideration of the premises, agree with said Mary, that ten thousand dollars shall be paid to her at my death, provided she shall faithfully perform all of said conditions on her part, and such performance in full shall be a condition precedent to any liability to her upon this agreement."

Both parties at the same time executed under seal another instrument, which was pinned to the former, as follows : " It is agreed between Godfrey Tallinger and Mary Tallinger that the annexed instrument shall, upon its delivery, be deposited with Satterlee and Yeomans, or such other person or persons as said parties may agree upon at any time, to be held by them until the death of said Godfrey Tallinger, as the said Godfrey desires that it should not be made a public matter, and that the observance of this agreement, upon the part of said Mary Tallinger, shall be a condition precedent to any liability upon said agreement."

The domestic life of Mr. and Mrs. Tallinger soon became unhappy and inharmonious, and an agreement was made for a separation, in pursuance of which, on the 20th day of July, 1882, they executed, under seal, the following instrument : " This agreement, made this 20th day of July, 1882, between Godfrey Tallinger, of Rochester, N. Y., and Mary Tallinger of the same place : Witnesseth, That in consideration of $5,000.00, this day paid by said Godfrey to said Mary, and other valuable considerations, it is agreed that said Mary shall

absent herself continuously from and not visit the house of said Godfrey, or communicate with him or molest him, or make any claim upon or against him in any manner or against his estate after his death, and will upon request of any person interested in the same, after his death, execute to and deliver to them release of dower or other claim or interest in the estate of said Godfrey ; and the said Mary does hereby release all claim of dower or other interest in any property not owned by said Godfrey or which he may hereafter own ; and if said Mary shall violate any of the conditions or provisions hereof, or shall fail to perform any of the same, she shall thereupon repay to said Godfrey, his assigns or personal representatives, said $5,000.00 and the interest thereon from this date, as liquidated damages, and she charges her separate estate therewith, and a certain agreement heretofore executed by said Godfrey and said Mary, whereby he agreed to pay at his death, upon the performance of certain conditions therein expressed, the sum of $10,000.00, is hereby canceled and abrogated."

Thereafter they lived separate, and Mr. Tallinger died on the 5th day of December, 1884. The plaintiff claimed dower in the real estate left by her husband, and it was admeasured to her ; and in October, 1886, she commenced this action to recover the $10,000 mentioned in the instrument executed February, 18, 1882. In her complaint she alleged an oral agreement to pay the $10,000 in consideration of her marriage to the testator, and the subsequent execution of the written agreement, and that the $10,000 became due and payable, and demanded judgment for that sum, with interest from the death of the testator. The defendants, in their answer, alleged, among other things, that the plaintiff did not, after the execution of the written instrument, live with the testator as his wife, caring for his household and performing all the duties of a wife faithfully ; but that, on the contrary, she grossly and willfully failed and neglected to perform her duties in the care and management of his household, and to sustain the dutiful relations of a wife. And they set up, as a further

defense, the execution of the instrument of July 20, 1882, and demanded judgment for $5,000, as therein specified, for liquidated damages. The plaintiff served a reply, simply denying the allegations of the counter-claim.

Upon the trial the plaintiff gave some evidence tending to show misconduct on the part of her husband, and that she had just cause for separation from him. The defendants then proved the instrument dated July 20, 1882, and gave no further evidence. Upon defendants' motion, the court then nonsuited the plaintiff. The judgment entered upon the non-suit was, upon appeal to the General Term, affirmed.

On the 20th day of July, 1882, the plaintiff held the obligation of the testator to pay her $10,000, at his death upon the conditions mentioned. That obligation constituted her separate estate, and under the laws of this state she had the same right to deal with it as if she were a *feme sole*. She could sell, release or discharge it at her pleasure. It was payable upon certain conditions which might not be performed by her; and the estate of her husband might not, at his death, be sufficient to meet it. Hence, clearly, the instrument, payable at an uncertain time in the future, upon the contingencies mentioned, was not of the value of $10,000. It is claimed, however, on the part of the plaintiff, that as she was the wife of the testator her agreement made with him on the 20th of July, 1882, did not bind her. It is undoubtedly true that so far as that agreement remained executory it could not have been enforced by Mr. Tallinger, or his executors. But it was executed. She received in cash $5,000, and was released from the conditions contained in the prior instrument binding her to live with him and faithfully to perform the duties of wife, and to take care of him and his household during his life. For the surrender, therefore, of the prior obligation she received ample consideration. There is no allegation in the complaint or reply and there was no proof upon the trial that the consideration of $5,000, paid to her in hand was not an adequate consideration for the surrender of the prior conditional obligation of her husband. There has never been a time in the

history of the law, and certainly not since 1848, when such an agreement between husband and wife relating to her separate estate, and fully executed, would have been absolutely void. She surrendered an obligation which she then held as a part of her separate estate, and in lieu thereof received $5,000, in money, and that became her separate estate; and it never could be held in a forum, administering both law and equity, that she could hold the money thus received and enforce the obligation which she had surrendered in consideration thereof. Agreements between husband and wife, founded upon valuable considerations, have frequently been enforced in equity. She may even sell her separate estate to her husband for a valuable consideration, and the sale will be upheld in equity. (*White v. Wager*, 25 N. Y. 328; *Winans v. Peebles*, 32 id. 423; *Hunt v. Johnson*, 44 id. 27; *Boyd v. De La Montagnie*, 73 id. 498.)

Here, by her own act, she surrendered, released and discharged her husband's obligation. Thereafter she did not, in any sense, hold or possess it, and she could regain it and be reinstated in her rights under it, only by a suit instituted in equity for that purpose, in which case relief could be granted to her according to the equities of the case as they appeared upon the proofs. The agreement of the 20th of July, 1882, cannot, therefore, be assailed in this action, because the parties thereto were husband and wife.

The further objection is made, on behalf of the plaintiff, that the agreement of July twentieth was illegal and against public policy, as it provided for the separation of husband and wife. If it were an executory agreement, and either party was seeking to enforce it, the objection would be a good one. But here the agreement had been executed. She took $5,000 and gave up her obligation. The law will never interfere at the instance of either party with what has been done in execution of an illegal agreement. It simply refuses to enforce such agreements, or such as are against public policy; but it never intervenes to relieve either party against them so far as they have been executed. It refuses to enforce such agree-

ments, not from any regard or concern for the parties thereto, but to promote the public policy and the general welfare; and, so far as they have been executed, they cease to interest the public, and public policy is supposed to be best subserved by letting them alone and leaving the parties to them where they have placed themselves. The obligation upon which she sues has been paid and discharged, and it does not avail her to say that such payment and discharge were in pursuance of an agreement which was, in fact, illegal. It has, nevertheless, been paid and discharged, and the law will not, at her instance, either directly or indirectly, set aside or undo what has been done on account of any illegality in the agreement.

It is also claimed by the plaintiff that, from the relation existing between her and Mr. Tallinger, it must be presumed that she was overreached, imposed upon or defrauded by her husband. But all the facts appear here, and there is nothing from which such a presumption can arise. At the time of the execution of the obligation of February 18, 1881, Mr. Tallinger was about seventy-two years old, and it was impossible on the twentieth of July thereafter to estimate precisely the value of that obligation. It was conditioned upon performance of several things by the plaintiff. Its value depended, to a large extent, upon the length of the testator's life, and of the adequacy of his property at death. Under such circumstances, it is not apparent that $5,000, in hand paid, was not a fair equivalent for the release of the obligation. There is no allegation in the complaint that she was overreached or defrauded, or that the amount paid her was not adequate. But, even if the plaintiff had been overreached by being induced to surrender the prior obligation, and to take in lieu thereof $5,000 in money, she was in no condition to succeed in this action. The defendants did not admit the liability of the testator upon the obligation of February eighteenth, but disputed it, and alleged that she had violated the conditions mentioned therein, and that she was not, therefore, entitled to recover anything. Under such circumstances, before she could recover upon the original instru-

ment, she should have repudiated the subsequent agreement of July twentieth, and should have tendered back the $5,000. It is not a case where, upon the undisputed facts, the plaintiff would be entitled to recover something, either under the original obligation or the substituted agreement. The executors denied their obligation to pay anything, and, in such a case, it was the duty of the plaintiff to restore the $5,000, that the litigation could thereafter be carried on solely upon the liability of the defendants under the original agreement. (*Gould* v. *Cayuga Nat. Bk.*, 86 N. Y. 75.)

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.