MARIA E. WOODMAN, Respondent, *v.* THOMAS D. PEN-
FIELD, Sheriff, Appellant.

*Supreme Court, Fourth Department, General Term, July 20, 1889.*

1. *Appeal. Referee.*—The refusal of a referee to respond to a request
to find is not a ground for reversal, unless such refusal is prejudi-
cial to the appellant. In view of an adverse finding upon the
only question involved in the case, the referee's refusal to find re-
quests, though sustained by the evidence, is harmless.

2. *Evidence. Memoranda.*—The admission in evidence of an inventory,
made by the witness at the time of the transaction, on proof that
it was then correct, is proper.

3. *Same. Intent.*—In an action for conversion against a sheriff for a levy
and sale of property claimed by plaintiff on an execution against
her husband, they may testify that, in the sale and transfer by
him to her, they had no intent to hinder, delay or defraud credi-
tors.

4. *Husband and wife.*—A transfer of personal property from husband
to wife is valid, when made in good faith and based upon a suffi-
cient consideration.

  See note at end of case.

Appeal from a judgment entered upon the report of a
referee.

*J. S. Baker*, for appellant.

*H. S. Bedell*, for respondent.

MARTIN, J.—This action was for the conversion of a
quantity of cigars to which the plaintiff claimed title. The
defendant sold them under and by virtue of two execu-
tions issued upon judgments against the plaintiff's hus-
band. The defendant sought to justify such sale on the
ground that the property in question was transferred by
the plaintiff's husband to her with an intent to defraud his
creditors, and that such transfer was therefore void as to

them.  The only question litigated on the trial, except the value of the property sold, was the validity of the plaintiff's title.

The referee found that the plaintiff was the sole owner and entitled to the possession of the property ; that it was unlawfully taken by the defendant and converted to his own use; that it was of the value of $969.35 ; and he awarded the plaintiff judgment for that sum, together with interest and costs.  The referee expressly declined to find that the transfer to the plaintiff was voluntary or without consideration, or that it was made with an intent to hinder, delay or defraud the creditors of her husband.

The conclusions of the referee as to the facts, as indicated both by his findings and his refusals to find, seem to be fairly justified by the evidence.  The question whether such transfer was fraudulent as to the creditors of the plaintiff's husband was a question of fact, and as the findings of the referee were sustained by the evidence, we do not think his findings should be disturbed.

But the defendant contends that the referee erred in refusing several of his requests to find, which he claims were sustained by the evidence.  If we were to assume that some of the requests proffered were sustained by the evidence and not found, still, as the referee has properly found adversely to the defendant upon the only question involved in the case, it can hardly be said that his refusal to find those requests was harmful to the defendant.  Such findings would not have changed the result, and would have in no way aided the defendant, so long as it was properly found that the plaintiff was the owner of the property, and there was an express refusal to find that the conveyance was fraudulent or made with a fraudulent intent or purpose.

While exceptions to alleged findings of fact when they are unsupported by evidence, and to requests to find when they are established by undisputed proof, present questions of law, and are reviewable on appeal (Bedlow *v.* N. Y. Float-

ing Dry Dock Co., 19 N. E. Rep. 800-802; Bullock *v.* Bemis, 20 N. Y. State Rep. 836), still, the refusal of a referee to respond to a request to find is not a ground for reversal, unless such refusal was prejudicial to the appellant. Matter of Hicks, 14 N. Y. State Rep. 320. We think the referee committed no error in refusing to find as requested by the defendant, which would justify an interference with the plaintiffs' judgment.

The defendant also contends that the referee erred in permitting the witness Swartfiguer to testify that an inventory made by him, when the property in question was transferred, was correct and in admitting it in evidence under defendant's objection and exception.

In Howard *v.* McDonough (77 N. Y. 592), which was an action for the conversion of a stock of goods consisting of many items, where a witness had made a memorandum of the items and their value, and he was permitted to use the memorandum in testifying, and it was received in evidence, it was held that the court might, in its discretion, require the witness to testify to each item separately, or it might allow the witness to testify quite generally to the items and their values, and receive the memoranda as the detailed result of his examination, leaving the adverse party to a more minute cross-examination. See McCormick *v.* Pa. Cent. R. R. Co., 49 N. Y. 304–316. We think the principle of these cases sustains the rulings complained of.

A further claim made by the defendant is, that the court erred in admitting in evidence the bill of sale made by the plaintiff's husband to her. This claim is based upon the theory that a contract between a husband and wife is void. This claim cannot be sustained. It must, we think, be regarded as settled in this state that such a transfer is valid and will be upheld when made in good faith and founded upon a sufficient consideration. Woodworth *v.* Sweet, 51 N. Y. 8; Benedict *v.* Driggs, 34 Hun, 94, and cases cited in opinion.

The referee committed no error in permitting the plaintiff and her husband to testify that they had no intent to hinder, delay or defraud his creditors when the sale and transfer to the plaintiff was made. Seymour *v.* Wilson, 14 N. Y. 567; Cortland County *v.* Herkimer County, 44 N. Y. 22.

We have examined the other questions presented by the defendant's brief, and find none that disclose error in the trial, or that seem to require special consideration.

Judgment affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concur.

---

NOTE ON CAPACITY OF HUSBAND AND WIFE TO CONTRACT WITH, AND TO SUE, EACH OTHER.

The recent legislation in regard to rights of married women has undoubtedly enlarged her power to contract with persons other than her husband, and has conferred upon her the right to contract in the same form as though unmarried. But her capacity to enter into a contract with her husband, or her husband with her, has not been affected by the act of 1884.

Chap. 381, Laws of 1884, provides as follows:

" § 1. A married woman may contract to the same extent, with like effect and in the same form as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate or otherwise, and in no case shall a charge upon her separate estate be necessary.

" § 2. This act shall not affect nor apply to any contract that shall be made between husband and wife.

" § 3. This act shall take effect immediately."

The common law, the former "Married Woman's Acts" and the construction given to them by the courts, determine the capacity and disability still existing in contracting with, and enforcing their rights, against each other. The principles of law relative to, and authorities of this State on, this subject, are herein discussed.

*Conveyances of real estate.*—Before the Married Woman's Acts of 1848, the husband acquired at law in the wife's freehold interest in lands for life, a freehold interest in himself during their joint lives. And so it was if lands were conveyed to her during coverture. And the legislature could not take away this vested right. Westervelt *v.* Gregg, 12 N. Y. 202; Wood *v.* Wood, 83 N. Y. 575. But in equity there was recognition of the capacity in a married woman to enjoy property separate

from her husband; and that too where she came by it during coverture. The language of a deed which recites, " only as and for her own separate estate, free from the control of her husband," was sufficient to create a separate estate in her, as any language would effect that end, where, from the nature of the transaction, or from the whole context of the instrument, that intent appears; nor need there have been a trustee named in the instrument. The law would create the husband a trustee for the wife in such case. Wood *v.* Wood, *ante.* Thus it stood with her lands, and the rights of husband and wife in them, when the Married Woman's Acts were passed. The effect of these acts was to give to a married woman, over all the property that she owned, the same control and power of management that she would have had in case she had been sole, with certain exceptions as to the manner of binding it for a debt, until the act of 1884 was passed.

Those statutes by their own operation changed her capacity to hold a separate estate as a matter of equity, into a legal estate, and she thereby became entitled to control and manage it, as though she was a *femme sole.* By those statutes she was given the power to sue and be sued, and could bring an action to recover the possession of premises, if she had been unlawfully ousted; Wood *v.* Wood, *ante;* Darby *v.* Callaghan, 16 N. Y. 71; and if her husband was the person who had thus ousted her, she could sue him. Wood *v.* Wood, *ante;* Wright *v.* Wright, 54 N. Y. 437.

Owing to the unity between husband and wife, the husband could not at common law convey directly to her. Diefendorf *v.* Diefendorf, 56 Hun, 639. But this principle is changed by chapter 537, Laws of 1887. Id. A deed from husband to wife would always be sustained in equity. Hunt *v.* Johnson, 44 N. Y. 27; Townshend *v.* Townshend, 1 Abb. N. C. 81; Jones *v.* Clifton, 101 U. S. 225; Diefendorf *v.* Diefendorf, *ante.*

In the latter case, plaintiff's husband, shortly prior to his death, executed and acknowledged a deed of real estate to her, and delivered it to a third person, with a direction to retain it for her until after his death, and then put it on record. The deed recited that it was in consideration of $300, money which plaintiff had paid to him, and stated that she was to expend three hundred dollars in the purchase of a cemetery lot, which she accordingly did. Plaintiff held notes of her husband. His brothers and sisters claimed title by descent to the real estate. In an action brought by her against them, it was held that she was the absolute owner of the property.

It was an established doctrine of the common law, that, in consequence of the unity of person between husband and wife, neither the husband nor the wife could grant, the one to the other. an estate in possession, reversion or remainder, to take effect in possession during the lifetime

of the grantor. White _v._ Wager, 25 N. Y. 328; Shepard _v._ Shepard, 7 Johns. Ch. 57; Voorhees _v._ the Presbyterian Church of Amsterdam, 17 Barb. 103; Simmons _v._ McElwain, 26 Id. 419; Dempsey _v._ Tylee, 3 Duer, 73; Hunt _v._ Johnson, _ante._ The rule itself was one of those stubborn mandates of the common law which requires absolute obedience from the courts, whatever they may think of the justice or equity of its application in a particular case. But it was, nevertheless, a very technical principle; and, where the design was for a husband to convey to the wife, it might be evaded in various ways, as by a feoffment to a third person to the use of the wife; or, a covenant with a third party to stand seized to the use of the wife; or, where the wife desired to convey to the husband the two could join in a conveyance to any one whom they could trust to convey immediately to the husband; and thus the title would be vested in him. White _v._ Wager, _ante;_ Merriam _v._ Harsen, 2 Barb. Ch. 232.

At common law, she could not convey to any one except by the expensive and dilatory process of fine and recovery; but afterwards, by statute, she was enabled to execute a valid deed of her lands by joining with her husband, and submitting to an examination to show that she acted without coercion; but she could not devise the lands. Id.

As to her capacity to acquire the title to property to her own use, the rule was, that all the personal estate which she possessed at her marriage, and all which came to her by any title during coverture, even when received as a compensation for her personal services, vested immediately in her husband, unless it was protected by a settlement to her sole and separate use. If she was the owner of land at the time of her marriage, or acquired title to it during coverture, the husband immediately became entitled to the rents and profits of it and was at once seized of a freehold estate in it. But none of these disabilities attached to the condition of a married man, who was as free to receive the title to property, and to dispose of it, after marriage as before, with the single exception that he could not be the grantee of a deed executed by his wife, or make a grant directly to her. But as to the world in general, the state of marriage did not affect his ability to acquire title to, or to dispose of, his property, just as he might have done if he had not been married; with the single exception of dower, the inchoate right to which he could not dispose of. Id.

The act of 1848 constituted the wife the sole proprietor of all the property of both kinds which she should own when she came to be married, and of all which should devolve upon her by any title during her coverture. It attempted to divest the rights already vested in her husband under the antecedent law, but as to this it was ineffectual. See Westervelt _v._ Greig, _ante;_ White _v._ Wager, _ante._

But it did not confer upon her the capacity to convey or devise real

estate. See Wadhams v. American Home Miss. Soc., 12 N. Y. 415. This power was given by the act of 1849, which authorized a married woman to convey and devise real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as though she was unmarried. The design was not to confer any additional advantages upon married men, but its intention was solely to benefit the other party to the marriage relation.

It does not enable a husband to take a title to realty directly from his wife, contrary to the rule of the common law.   Id.

The power in terms given to a married woman, by the act of 1849, to convey and devise real and personal property, as though she was unmarried, does not necessarily include any conveyance which she might make to her husband.   There was, no doubt, an intention to confer upon the wife the legal capacity of a *femme sole*, in respect to conveyances of her property, but this does not prove that she can convey to her husband, for no such question could possibly arise in respect to a *femme sole*, inasmuch as there was no person to whom, in respect to conveyances made by her, the rule of the common law could apply.

It is not the disability of the wife alone which would, by the common law, render void her conveyance to her husband; the husband was as much disabled to take under such conveyance as she was to convey. To render a conveyance valid, therefore, the husband's disability, as well as that of the wife, must be removed; but there is no language in these acts, and nothing in their apparent intention, which looks to the removal of any disabilities under which he labored.   It was held in White v. Wager, *ante*, that a deed executed by a wife, in contemplation of death, to her husband, in good faith and voluntarily, was wholly ineffectual and void.

In Winans v. Peebles, 32 N. Y. 423, it was held that the disability of the husband to take land by conveyance from the wife remains as before the statute of 1849, and that a voluntary conveyance of land by the wife to the husband is wholly ineffectual.   But it was also held in this case that the validity of the deed from the wife to the husband may be established by the application of principles of equity, where a consideration has been paid, and also where the grantee is entitled to equitable relief for improvements made upon the premises in good faith, to the extent of such equitable claim.

A conveyance of real estate by deed from a husband to his wife intended as a gift *in presenti*, though void at law may be sustained and enforced in equity.   Hunt v. Johnson, *ante*.   In the case of Shepard v. Shepard, *ante*, the consideration of the deed was natural affection, and to make a sure maintenance for the wife, in case she should survive her husband.   And it was held that the consideration was very

meritorious and that the deed from the husband to the wife may, and ought in this case to, be aided and enforced by the court of chancery.

The same doctrine is laid down in Newfolk *v.* Thomson, 3 Edw. Ch. 92. In Garlick *v.* Strong, 3 Paige, 440, a post-nuptial contract between the husband and wife, by which a bond and mortgage were set apart for the use of the wife, was sustained. To the same effect is Bullard *v.* Briggs, 7 Pick. 533.

In White *v.* Wager, *ante,* the question of the equitable interposition of the court did not and could not arise. The action was to recover damages for breach of warranty of title. The plaintiff alleged that no title to the land was transferred to him, because no title was in his grantor, and that no title was in his grantor because the latter obtained his title by a conveyance to his wife; and that by the rules of law, a wife could not convey to her husband a title to take effect in possession during her life. The defendant did not attempt apparently to sustain his title by an appeal to the equitable powers of the court. This power could be invoked only in a case where the question should arise between the husband or those claimimg under him, and those who, except for the deed, would have had the title as heirs of the wife. A disposition of it between the husband and a stranger could not have affected the rights of the wife's heirs. The case of White *v.* Wager was well decided upon its facts, and that without trenching upon the well settled powers of the court to afford equitable relief in a proper case, and when presented by the parties entitled to ask it.

In Winans *v.* Peebles, *ante,* the proper parties were before the court. It was an action by the children of the wife by a former marriage to set aside a conveyance made by her to her husband. The title of the wife was by a deed from a third person, and the consideration for it was paid by her father. The conveyance was made by her directly to her husband, and upon the request of her father made at the time the property was given to her, and her verbal promise to convey to her husband after her father's death. The court below sustained the conveyance upon principles of equity. The court of appeals reversed this judgment, holding the law to have established to the contrary in White *v.* Wager, *ante,* and saying that the deed from a married woman to her husband was void, and that being wholly without consideration, the court of equity would not interfere to sustain it. But it does not appear whether the deed was expressed to be in consideration of love and affection, or whether that was actually the moving consideration. It is simply stated that no consideration was paid by the husband or received by the wife.

That case differs from the case of Hunt *v.* Johnson, *ante,* in this, that it was conveyance by the wife to the husband; while in the latter case the conveyance was by the husband to the wife. At law either convey-

254     WOODMAN *v.* PENFIELD.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

ance is equally void, but they do not necessarily stand upon the same basis in equity. It is the duty of the husband to provide an assured and comfortable support for his wife during his life and after his death, but no duty rests upon the wife to provide for the husband. An application of the husband's property for her comfort is eminently equitable, and has been favored by the courts from their earliest existence. There is in the nature of things a broad and palpable distinction against an equitable claim in the husband's favor, and in favor of such claim for the wife. And it was upon this distinction that the case of Hunt *v.* Johnson, *ante*, was decided.

In equity, a deed by a wife directed to her husband, may be treated as valid. Townshend *v.* Townshend, 1 Abb. N. C. 81.

The case of White *v.* Wager, *ante*, was a suit at law for the recovery of money, in which it was held that a deed executed by a wife in contemplation of death, to her husband, was wholly ineffectual. But there are other cases, which hold, in substance, that such a conveyance. made for a good consideration, may be sustained and enforced in equity, Townshend *v.* Townshend, *ante* ; Hunt *v.* Johnson, 44 N. Y. 27.

Although in this latter case the deed was from the husband to the wife, still the principle upon which the case rests, and its reasoning would in equity uphold a conveyance, upon a good consideration from the wife to the husband.

A deed of land in 1853 directly from the husband to his wife, though void at law, was not necessarily so in equity. Mason *v.* Libby, 19 Hun, 119 ; Hunt *v.* Johnson, *ante;* Peck *v.* Brown, 2 Robt. 119; Townshend *v.* Townshend, *ante;* Simons *v.* McElwain, *ante;* Shepard *v.* Shepard, *ante*. Courts of equity will uphold grants from husband to wife, when they would be void at law. Equity will not, however, uphold grants of all his estate to his wife by which he will be denuded. The circumstances of the husband will be considered where creditors are concerned. Mason *v.* Libbey *ante*.

Prior to the enactment of chapter 537 of the Laws of 1887, a deed directly between husband and wife was wholly ineffectual by law; and such is the case even though the conveyance was made in 1886. Fruhauf *v.* Bendheim, 53 Hun, 636. But a contract for the purchase and sale of land is not a deed. Id. Although under such a contract, it has frequently been said that the land becomes real estate in the purchasers, yet even then the vendor retains the legal title as their trustee. Id.; Thomson *v.* Smith, 53 N. Y. 301. The assignment of a contract of this kind is not equivalent to a conveyance of the property to which it relates, for the legal title to such property remains in trust in the vendor. Id. If such an assignment was equivalent to a deed, the wife of the original vendee would have to join in the assignment, in order to cut

off her dower, in case he should desire to transfer his interest in the contract to a third party. Id.

Chap. 537, Laws of 1887, provides as follows:

"§ 1. Any transfer or conveyance of real estate hereafter made by a married man directly to his wife, and every transfer or conveyance of real estate hereafter made directly by a married woman to her husband, shall not be invalid because such transfer or conveyance was made directly from one to the other without the intervention of a third person.

"§ 2. This act shall take effect immediately."

This section simply permits them to convey directly to each other where they could do so previously through a third party, but does not enlarge their capacity to contract with each concerning real estate.

In Ellis v. Myers, 54 Hun, 638, a few days prior to making an assignment, one of the assignors made and delivered a deed of real estate to his wife. The facts were these: On a settlement of the estates of her father and uncle in 1844 and 1864, she received toward her share of the estate, notes given to them by her husband for loans. She surrendered the notes to her husband, and he promised to pay her when he could, and the deed was given in payment therefor. And it was held that such indebtedness formed a good consideration for the deed.

Although the marriage between them took place prior to the act of 1848, his promise to her made to reimburse her the money which he borrowed from her, furnishes the foundation in equity for upholding a conveyance made for that purpose. The husband has a right to decline to assert absolutely his marital rights to the personal property of his wife, and to borrow the money of her with the understanding and agreement that it should be repaid. Id. Though she could not have enforced her claim for loaned money by reason of the statute of limitations, a creditor is not in a situation to insist upon the statute against such indebtedness. This defense is personal to the debtor and manifestly was waived, when the settlement and payment of the indebtedness took place by means of the conveyance. Id.; Jacox v. Caldwell, 51 N. Y. 395.

In Brooklyn Bank v. Lamon, 56 Hun, 647, the defendants were married in 1843 or 1844. The wife at the time of her marriage had one thousand pounds sterling in her own right. This money was advanced to her husband, and by him used in the support of the family, under an agreement that he would repay her with interest. Subsequently he repaid her considerable sums on account of the loan, which were deposited by her in savings banks. This money was withdrawn by her and again loaned to him under a similar agreement. He, in 1886, conveyed certain land to her in payment of the said loans. No question of inadequacy of consideration arises other than is implied from the fact that the consideration, being the repayment of these loans, was insufficient in law. This claim was made on the ground that the parties were married before the Married Women's acts were passed, and

256     WOODMAN *v.* PENFIELD.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

for this reason the money belonged in law to the husband. And it was held that the deed was supported by a good consideration though given in repayment of moneys received by the husband from the wife under an agreement that he would repay her with interest, even though they were married before 1848. This point was so decided in the case of Syracuse Plow Co. *v.* Wing, 85 N. Y. 421.

In that case the money was loaned by the wife to her husband on a promise to repay the same, and the court said: "If the money was received by the husband as his wife's, and to be accounted for by him to her he waiving his marital rights thereto, she had an equitable right thereto sufficient to sustain the mortgage which he subsequently gave to secure it, and the mere lapse of time would not invalidate the security." The marriage in this case was entered into before the passage of the Married Women's Act. Brooklyn Bank *v.* Lamon, *ante;* Woodworth *v.* Sweet, 51 N. Y. 9; Jacox *v.* Caldwell, Id. 395; Babcock *v.* Eckler, 24 Id. 623; McCartney *v.* Welch, 51 Id. 626.

In The Syracuse Chilled Plow Company *v.* Wing, *ante,* the defendant in 1844 received from the estate of his wife's father the sum of $1,366, to which he was entitled. This sum he applied toward the purchase of a farm and took the title in his own name. From time to time before any liability to plaintiff was incurred, the money was spoken of, between him and his wife, as her money, and he promised to execute to her a paper to show for it, but no such paper was executed until 1878 when he executed to a third person his bond, secured by a mortgage upon his farm, for said sum, and interest, with the understanding that said security should be assigned to the wife, which was done. The wife purchased a prior mortgage upon the farm with other moneys received by her in her own right after 1848. In 1878, the husband conveyed the farm, through a third person, to his wife, subject also to a third mortgage thereon, in payment of the two mortgages so held by her. The plaintiff, as a judgment creditor of the husband, brought an action to set aside such conveyance to the wife as fraudulent and void as to creditors; and it was held in such action that, although the money was received by the husband prior to the passage of the Married Women's Act of 1848, yet, if received by him as his wife's, to be accounted for or secured by him, he could waive his marital rights thereto, and the wife has an equitable right to the fund sufficient to sustain the mortgage given to her, and the mere lapse of time would not invalidate the security.

*Conveyances to husband and wife.*—The common law rule that, when land is conveyed to husband and wife, they do not take as tenants in common, or as joint tenants, but each becomes seized of the entirety, *per tout* and not *per my,* and that on the death of either the whole survives to the other, was held to be still subsisting in this state, notwith-

## WOODMAN v. PENFIELD. 257

Capacity of Husband and Wife to Contract with, and to Sue, each other.

standing the acts in relation to married women. Zorntlein v. Bram, 100 N. Y. 12.

The act of 1880, which allows husband and wife to make division between themselves of land thus held, does not abrogate the former rule. At all events it cannot affect the title where the conveyance to husband and wife was made prior to the passage of said act. The seizin of the entirety to each, and the right of survivorship, could not be divested by a subsequent statute, as those rights vested by virtue of the grant and not of mere succession. The act of 1880 could not so operate as to authorize either the husband or wife in such case separately to convey to a third party. Id.

By reason of the unity of husband and wife, in the view of the law an obligation taken in the name of both inures to the benefit of both, and the whole goes to the survivor. Platt v. Grubb, 41 Hun, 447. This old rule of law is still prevalent in this state. Id.; Bertles v. Nunan, 92 N. Y. 151.

Chapter 472 of the Laws of 1880, seems to recognize the right of husband and wife to hold lands as tenants in common, joint tenants or tenants by entireties. Under the statutes, the right of a married woman, to take and hold personal property, is as broad and absolute as her right to take and hold real estate. Kaufman v. Schoeffel, 46 Hun, 571. And the husband and wife may take and hold personal property in common.

Chap. 472, Laws of 1880, provides as follows:

"Section 1. Whenever husband and wife shall hold any lands or tenements as tenants in common, joint tenants, or as tenants by entireties, they may make partition or division of the same between themselves, and such partition or division, duly executed under their hands and seals, shall be valid and effectual; and when so expressed in the instrument of partition or division, such instrument shall bar the right of dower of the wife in and to the lands and tenements partitioned or divided to the husband.

"§ 2. This act shall take effect immediately."

By the common law, when land was conveyed to husband and wife, they did not take as tenants in common or as joint tenants, but each became seized of the entirety per tout et non per my, and upon the death of either the whole survived to the other. Bertles v. Nunan, ante; 12 Abb. N. C. 283. The survivor took the estate, not by right of survivorship simply, but by virtue of the grant which vested the entire estate in each grantee. During their joint lives, the husband could, for his own benefit, use, possess and control the land and take all the profits thereof, and he could mortgage and convey an estate to continue during the joint lives, but he could not make any disposition of the land that would prejudice the right of his wife in case she survived him. Id.

17

Capacity of Husband and Wife to Contract with, and to Sue, each other.

This rule as to the effect of a conveyance continued in force, not-withstanding the Revised Statutes which provided that "every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy.'" Id. Dias v. Glover, 1 Hoff. Ch. 71; Torrey v. Torrey, 14 N. Y. 430; Wright v. Saddler, 20 Id. 320. In the latter case, the court said: "It appears to be well settled that this statute does not apply to the conveyance of an estate to husband and wife. They are regarded in law as one person."

It is not the effect of section three of chapter 200 of the Laws of 1848, as amended by chapter 375 of the Laws of 1849, and was not its purpose, to change the force and operation of a conveyance to a wife. It does not enlarge the estate which a wife would otherwise take in land conveyed to her; and, whatever the effect of a conveyance to a husband and wife was, prior to this statute, so it remains. If the operation of such a conveyance was to convey the entire estate to each of the grantees, so that each became seized of the entirety, there is nothing in the force or effect of the language used to change the operation of such a deed so as to make the grantees tenants in common. This section gives the wife no greater right to receive conveyances than she had at common law; but its sole purpose was to secure to her during coverture, what she did not have at common law, viz.: the use, benefit and control of her own real estate, and the right to convey and devise it as though she was unmarried. Bertles v. Nunan, ante.

The provisions in the acts of 1860 and 1862 have doubtless reference only to the separate property of a wife which she owns apart from her husband, and have no reference whatever to land conveyed to husband and wife, in which by the common law each became seized of the entirety. Bertles v. Nunan, ante. They do not limit or define what estate the husband and wife shall take in the lands conveyed to them jointly. Their utmost effect is to enable the wife to control and convey whatever estate she gets by any conveyance made to her solely, or to her jointly with others than her husband. Id.

The course of legislation renders it very evident that the legislature did not understand that the common law rule as to the unity of husband and wife had been abrogated by the acts of 1848, 1849 and 1860, and that, whenever it intended an invasion of this rule, it made it by express enactment. But still more significant is the act of 1880, which provides that, "whenever husband and wife shall hold any lands or tenements as tenants in common, joint tenants or as tenants by entireties, they may make partition or division of the same between themselves," by deed duly executed under their hands and seals. The disability of husband and wife growing out of their unity of person, to convey to each other, is here recognized, as is also the estate by entireties created by a deed to them jointly. Id.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

The ability of the wife to make contracts is limited. Her general engagements are absolutely void, and she can bind herself by contract only as she is expressly authorized to do so by statute. Although § 7 of the act of 1860 authorizes a married woman to maintain an action against any person for an injury to her person or character, yet the court of appeals has held that she cannot maintain an action against her husband for such an injury. Shultz *v.* Shultz, 89 N. Y. 644. And so it was held, notwithstanding the acts of 1848, 1849 and 1860, that the common law disability of husband and wife, growing out of their unity of person, to convey to each other, still existed. White *v.* Wager, *ante;* Winans *v.* Peebles, *ante;* Meeker *v.* Wright, 76 Id. 262; 7 Abb. N. C. 299; reversing 11 Hun, 533. It is believed also that the common law rule as to the liability of the husband for the torts and crimes of his wife are still substantially in force. Bertles *v.* Nunan, *ante.*

There is no reason for holding that the common law rule as to the effect of a conveyance to husband and wife has been abrogated.

In Goetet *v.* Gori, 31 Barb. 314, it was held that a lease for a term of years executed to husband and wife, was unaffected by the acts of 1848, 1849, and that husband and wife by conveyances to them still took as tenants by the entirety.

In F. & M. Nat. Bank *v.* Gregory, 49 Id. 155, it was held that these statutes had no relation to or effect upon real estate conveyed to husband and wife jointly, and that, in the case of such conveyance, notwithstanding those statutes, they take as tenants by the entirety.

In Miller *v.* Miller, 9 Abb. N. S. 444, it was held that the common law rule was applicable to a conveyance made to husband and wife in 1867.

In Freeman *v.* Barber, 3 N. Y. S. C. 574, the same rule was applied in 1874 by the supreme court. It was held that the law was settled in this state that, in the case of a conveyance to husband and wife, they take, not as joint tenants or as tenants in common, but as tenants by entireties, notwithstanding the statute then enacted.

In Beach *v.* Hollister, 3 Hun, 519, decided in 1875, the court said: "These statutes operate only upon property which is exclusively the wife's, and were not intended to destroy the legal unity of husband and wife, or to change the rule of the common law governing the effects of conveyances to them jointly."

In Ward *v.* Krumm, 54 How. 95, decided in 1876, it was held that, under a deed executed to husband and wife in 1872, both became seized of the entirety, though the wife paid the entire consideration of the conveyance.

In Meeker *v.* Wright, *ante,* the judge writing the opinion reached the conclusion, that the common law rule governing conveyances to husband and wife had been abrogated by the modern legislation in this state. But this portion of the opinion was not concurred in by a majority of the judges.

In Feely *v.* Buckley, 28 Hun, 451, it was held by a divided court, upon

260       WOODMAN *v.* PENFIELD.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

the authority of the last cited case, that tenancy by the entirety is abrogated by the Married Women's Acts; and upon the same authority a similar rule was laid down in Zorntlein *v.* Bram, decided in the superior court of New York, by a divided court, and reported in 16 W. Dig. 458.

But it was decided in Forsyth *v.* McCall, in the fourth department in June 1880, and in Meeker *v.* Wright, after a new trial in the third department, that the common law rule was not abrogated. 27 Alb. L. J. 199.

Similar legislation to that which exists in this state, as to the rights and property of married women, exists in many of the states of the union, and the decisions are nearly uniform in all the other states where the question has arisen, that a conveyance to husband and wife has the common law effect, notwithstanding such legislation. See Bates *v.* Seeley, 46 Pa. St. 248; French *v.* Mehan, 56 Id. 286; Diver *v.* Diver, Id. 106; Fisher *v.* Brown, 25 Mich. 350; McDuff *v.* Beauchamp, 50 Miss. 351; Washburn *v.* Burns, 34 N. J. L. 18; Chandler *v.* Cheney, 37 Ind. 391 ; Marburgh *v.* Cole, 49 Md. 402; Bennett *v.* Childs, 19 Wis. 362; Robinson *v.* Eagle, 29 Ark. 202.

It is impossible now to determine how the rule in the remote past obtained a footing, or upon what reason it was based, and hence it is impossible now to say that the reason, whatever it was, has entirely ceased to exist. Bertles *v.* Nunan, *ante.*

There are many rules appertaining to the ownership of real property originating in the feudal ages, for the existence of which the reason does not now exist, or is not discernible, but the courts, on that account, are not authorized to disregard them. They must remain until the legislature abrogates or changes them, like statutes founded upon no reason, or upon reasons that have ceased to operate. Id. If the rule is to be changed it should be changed by a plain act of the legislature, applicable to future conveyances ; otherwise incalculable mischief may follow by unsettling and disturbing dispositions of property made upon the faith of the common law rule. Id.

In Meeker *v.* Wright, *ante*, it was held that, where a husband conveyed directly to his wife his interest in land held by them in entirety, and also personal property, and the wife gave him a bond and mortgage for the purchase price thereof, such bond and mortgage were valid.

*Release of dower.*—A release by a wife of her inchoate right of dower, by joining with her husband in a conveyance of his lands, is a good consideration for his promise to set apart a portion of the purchase money to her separate use, and equity will compel the husband to perform the agreement ; Doty *v.* Baker, 11 Hun, 222; Garlick *v.* Strong, *ante; Foster v.* Foster, 5 Hun, 557; and where a promissory note was given by the husband to the wife in consideration of her release of her inchoate right of dower by joining with him in a deed, it was held valid. Brooks *v.* Weaver, 3 Alb. L. J. 283.

But although a release by a wife of her inchoate right of dower in the

## WOODMAN v. PENFIELD. 261

Capacity of Husband and Wife to Contract with, and to Sue, each other.

lands of her husband is a good consideration for his payment, or his promise to pay, to her, a part of the purchase money, yet, as against the creditors of the husband, whose debts existed at the time, in case he is insolvent, she will not be permitted to take or retain more than the value of the consideration. Doty v. Baker, *ante;* Shepard v. Shepard, *ante;* Garlick v. Strong, *ante;* Wickes v. Clarke, 8 Paige, 161.

In Smart v. Haring, 14 Hun, 276, it was held that, a release by a wife of her inchoate right of dower in the lands of her husband is a good consideration for his paying or promising to pay her therefor ; and a conveyance of property to her in pursuance of such agreement is valid, except as against creditors existing at the time thereof, and is valid as to them to the extent of the value of such inchoate right, computed according to the rule laid down in Jackson v. Edwards, 7 Paige, 408.

In Kelly v. Case, 18 Hun, 472, an action was brought upon a promissory note for $3,000 made by one Kelly to the order of his wife. It was given to induce her to release her inchoate right of dower in a house and lot sold by him for $2,500. Her right was of the value of $390.92. Payments to the amount of about $1,400 had been made upon it before the commencement of the action. It was held that the note was only valid to the amount of the value of her inchoate right of dower, and that, as the payments made exceeded that amount, the action could not be maintained. It was further held that the wife's inchoate right of dower is not included in the kinds of property specified in § 1 of chapter 90, Laws of 1860, nor is it within the provisions of § 7 of that act, as amended by chapter 172, Laws of 1862.

Post-nuptial agreements between husband and wife, though void in law, will be sustained and enforced in equity to the extent of the actual consideration thereof. Foster v. Foster, *ante;* Shepard v. Shepard, *ante.*

Accordingly, where the husband, in order to induce his wife to relinquish her right of dower in certain real estate which he wished to sell, agreed to give her $70 a year during his life, it was held that the release by his wife, of her inchoate right of dower was a valuable and sufficient consideration for the promise. Garlick v. Strong, *ante;* Simar v. Canaday, 53 N. Y. 298, and that the husband should be compelled to perform the agreement on his part.

*As to personal property.*—In Jewett v. Noteware, 17 W. Dig. 438, an action was brought by a receiver in supplementary proceedings to set aside a mortgage given by a husband to his wife as in fraud of creditors. When the mortgagor married the mortgagee, she had a separate estate of $1,100. Soon after the marriage, she let her husband have this amount upon an agreement that he would give her security therefor whenever she wished it. Eighteen years afterwards he gave her the mortgage in question to secure the loan and interest. This was done while a suit was pending against him, the result of which he feared, and which was soon after decided against him. His intent in giving the mortgage was to secure his wife in any event. And it was held that, whatever was the intent of the wife, her

act in taking security for the exact amount of a *bona fide* debt cannot be fraudulent as against other creditors; and that the judgment creditor could not successfully attack the mortgage.

In Tallinger *v.* Mandeville, 113 N. Y. 427, in pursuance of an antenuptial agreement, the defendant's testator executed to plaintiff, who was his wife, an instrument, by which he agreed to pay to her $10,000 at his death, provided she lived with him as his wife up to that time and faithfully performed the duties of that relationship. But subsequently the parties executed another instrument by which plaintiff, in consideration of $5,000 then paid to her by her husband, released and cancelled the former agreement. In an action upon the original agreement it was held that, while the latter one, so long as it remained executory, could not have been enforced, yet having been executed, in the absence of any allegation of fraud, plaintiff was not entitled to be relieved therefrom; and that having released her husband's obligation under the former agreement, she could be reinstated in her rights under it only by a suit in equity instituted for that purpose.

There has never been a time in the history of the law, and certainly not since 1848, when such an agreement between husband and wife relating to her separate estate, and fully executed, would have been absolutely void. In this case, the wife surrendered an obligation which she then held as part of her separate estate, and in lieu thereof received $5,000 in money, and this thereupon became her separate estate.

It never can be held in a forum, administering both law and equity that she can hold the money thus received and enforce the obligation which she has surrendered in consideration thereof. Id. Agreements between husband and wife, founded upon valuable considerations, have frequently been enforced in equity. She may even sell her separate estate to her husband for a valuable consideration, and the sale will, in equity, be held. Id.; White *v.* Wager, *ante;* Winans *v.* Peebles, *ante;* Hunt *v.* Johnson *ante;* Boyd *v.* De La Montagnie, 73 Id. 498.

Even though the latter agreement in Tallinger *v.* Mandeville, *ante,* was illegal and against public policy, in providing for a separation of husband and wife, the law will never interfere, at the instance of either party, with what has been done in execution of an illegal agreement. It simply refuses to enforce such agreements, or such as are against public policy; but, so far as they have been executed, they cease to interest the public, and public policy is supposed to be best subserved by letting them alone and leaving the parties to them where they have placed themselves. Id. Since the obligation upon which she sues has been paid and discharged, it does not avail her to say that such payment and discharge were in pursuance of an agreement which was, in fact, illegal. The law will not, at her instance, either directly or indirectly, set aside or undo what has been done, on account of any illegality in the agreement. Id.

In Spaulding *v.* Keyes, 52 Hun, 612, the wife loaned money to her hus-

band at various times, for which with the interest the husband gave her a chattel mortgage, in order to secure the amount. This money originally belonged to the husband. He received it as a bounty for enlisting as a volunteer in the United States service, and gave it to his wife. It was held that the gift was valid, the money could not be reached by the husband's creditors, and the consideration for the wife's mortgage was sufficient to uphold it.

In the Bowery Nat. Bank of New York v. Sniffen, 54 Hun, 394, an action was brought upon a promissory note, given in 1887 by a married woman, payable to the order of her husband, who had indorsed the same before its maturity to the plaintiff. The maker of the note was a married woman who claimed that the note was delivered without consideration therefor. The court directed a verdict for the plaintiff and ordered the exceptions to be heard in the first instance at the general term.

The plaintiff was undoubtedly a *bona fide* holder of the note in question, having paid full value therefor to the payee. But, notwithstanding this fact, as the law stood prior to the enactment of chapter 381 of the laws of 1884, no right of recovery existed.

In the case of the Second Nat. Bank of Watkins v. Miller, 63 N. Y. 639, it was definitely held that, where a married woman had made certain notes payable to the order of her husband, which were presented by him to the bank, the notes were nullities, and no implication, presumption or impression that she was to be benefited by them in her business or estate could be drawn from their form, or from the fact that she had given them to her husband for the purpose of having them discounted, but that, in order to charge her, it must be made to appear by evidence *aliunde* the instrument that they were, in fact, made in her separate business or for the benefit of her separate estate. The same rule was laid down in the Saratoga County Bank v. Pruyn, 90 N. Y. 250.

The fact that she owns a separate estate is not alone sufficient. Id; Broome v. Taylor, 76 N. Y. 564. In the first cited case it was held that a married woman cannot bind herself by contract, unless, (1), the obligation was created by her in or about carrying on her trade or business; or (2), the contract relates to or is made for the benefit of her separate estate; or, (3), intention to charge separate estate is expressed in the instrument or contract by which the liability is created—, The Manhattan Brass & Mf'g Co. v. Thompson, 58 N. Y. 80; Nash v. Mitchell, 71 Id. 199; or, (4), the debt was created for property purchased by her.

The enactment of chapter 381 of the Laws of 1884 has made a change in the principle enunciated in these cases. Bowery Nat. Bank v. Sniffen, *ante.* By this section the rules laid down in the cases cited have been abolished, except so far as exceptions arise under § 2 of the act; and it is no longer necessary, in order to hold a married woman upon her contract, to prove that the obligation was created by her in or about carrying on her trade or business, or that the contract relates, or is made for, the benefit of

her separate estate, or that the intention to charge her separate estate is expressed in the instrument by which the liability is created. Id.

The exception contained in § 2 of this act provides that this act shall not apply to any contract that shall be made between husband and wife. Id.

In this case the note made by the wife to the order of her husband was mere accommodation paper and a loan of her credit by her to her husband. In such case the note was no contract between the husband and wife. There was no obligation which could be enforced by the husband against the wife under any circumstances. Where two parties execute an instrument without any intention of creating an obligation between them, there is no contract. There was no intention on the part of the maker to contract with the payee, and no intention on the part of either of the parties that any obligations, as between themselves, should be entered into because of the giving of the note. Not until the bank had discounted the note in question and given the proceeds of such discount to the husband, did the contractual relation spring into existence. In the loaning of her credit to her husband the wife took this method, and in so doing no contractual relation was formed between the husband and the wife, nor was any contract whatever made between them by reason thereof. Id.

It may be a question whether it was the intention of the legislature to exempt contracts of this description from the operation of the first section of the act of 1884. It was probably its intention to guard the wife against the making of contracts between herself and her husband which might be enforced by him against her separate estate; and the policy of the law was not to promote traffic between the two except under the same restrictions that had heretofore existed; and it was contracts of this character to which the exception in the statute was intended to apply, and not to those transactions which are contracts in form between husband and wife, but which cannot be enforced until the right of some third party has intervened. That this construction of the act is in accord with its intention seems to be fortified by the passage of the act of 1887, which permits husband and wife to convey directly to each other real estate without intervention of a third person. By the passage of this act, the legislature indicated that it was its policy to allow husband and wife to do directly that which heretofore they had been only able to do through the intervention of some third party who really had no interest in the transaction.

The prohibition of the act of 1884 is against contracts between husband and wife; that is, agreements or instruments made between these parties which would be valid contracts under the provisions of the first section. The allged contract in Bowery Nat. Bank *v.* Sniffen, *ante,* between the husband and wife arising out of the note in question is no contract at all, and is not valid even under the broad provisions of the first section of this act, and the exception contained in the second section thereof can have no application.

In Queens County Bank v. Leavitt, 56 Hun, 647, an action was brought upon a promissory note made by a wife to the order of her husband, and containing a clause whereby she bound her separate estate for the payment of the note. The note was made for the accommodation of the husband, without consideration as between the husband and wife, and he endorsed the same and delivered it to the plaintiff for the purpose of taking up another note which the plaintiff held against him, and which was also made by his wife. She had full knowledge of the use to which the note was to be appropriated and made no claim of any diversion of the paper. And it was held that though the note was made by the wife for the accommodation of her husband, the existence of the debt from the husband to the plaintiff was a sufficient consideration between them to sustain a transfer of the note. Schepp v. Carpenter, 51 N. Y. 602. As it was an accommodation note, it did not inure as a contract between the husband and wife, for the reason that it had no inception until it was discounted or taken by the plaintiff in the place of the old note. Bowery Nat. Bk. v. Sniffen. *ante.*

Where there is no intention to create an obligation of the wife to the husband by the execution of a note, which has no inception as a contract until its delivery for discount or in payment, chapter 381, Laws of 1884, respecting the capacity of married women to make contracts, and the reservation and proviso contained in the second section of this act, can have no application. Queens County Bank v. Leavitt, *ante.*

Where it is the intention of the wife to become surety for her husband, she had capacity and competency to enter into such an obligation previous to the law of 1884, and her obligation thus assumed is valid and binding. Id.; Corn Ex. Bank v. Babcock, 42 N. Y. 613.

In Granger v. Granger, 41 Hun, 638, the plaintiff and defendant were husband and wife. An action was brought by the husband upon a promissory note executed by the wife payable to his order, for the consideration of the release by him of an agreement that he had with her to work her farm on shares. And it was held that, as the note was given upon a contract pertaining to her own separate estate, she was bound by such contract whether or not the same could be enforced in an action at law.

In Westerfield v. Jackson, 41 Hun, 645, a wife, who from 1874 until her death in 1878 was weak mentally and incapable of taking care of herself or her property, had an income from her separate estate of $4,000 a year, which was paid to her husband during this time. In 1876, certain taxes and assessments were paid upon a portion of her separate estate in the name of the husband, and about the same time he procured from her a demand note for $1,123.75, for moneys advanced on account of taxes and assessments on, etc. Less than a month after the note was executed the husband received $1,500 belonging to the principal of his wife's estate. A suit was brought against the wife's executor to recover the amount of the note. And it was held that the action could not be maintained. The pre-

Capacity of Husband and Wife to Contract with, and to Sue, each other.

sumption was that the money, for which the note was given and by which the taxes were paid, was a part of the income of the wife.

No power existed at common law by which the husband and wife could, by contract between themselves, change the rights, liabilities and obligations which inhere to the marital relation. Third Nat. Bank *v.* Guenther, Buff. Super. Ct., July 13, 1888; Beach *v.* Beach, 2 Hill, 260. Among the liabilities thus created by the marital relation, always existing, and which still exists, is the obligation resting upon the husband to support and maintain the wife, and this without regard to whether the wife is, or is not, possessed of a sole and separate estate. Maxon *v.* Scott, 55 N. Y. 247; Coleman *v* Burr, 93 Id. 17.

The unity of the husband and wife has not been destroyed by the several acts which have been passed by which her common law liabilities have been very largely removed, except so far as the statutes expressly provide. Accordingly, it has been held that a deed running directly from the wife to the husband was ineffectual to pass title. White *v.* Wager, *ante.*

It has also been held that, by conveyance of land to the husband and wife, their heirs and assigns, each becomes seized of the entirety. Bertles *v.* Nunan, *ante.*

So it has been held that the husband and wife are not authorized to form a co-partnership for the purpose of trade or business. Kaufman *v.* Schoeffel, 37 Hun, 140; Fairlee *v.* Bloomingdale, 67 How. 292; Noel *v.* Kinney, 31 Alb. L. J. 328; 15 Abb. N. C. 403; 106 N. Y. 74.

These authorities clearly show that only to the extent to which the common law disabilities have been removed the husband and wife may contract. And the intent of the legislature to still retain the oneness of the husband and wife, is made more manifest by the statute of 1884, which removed all disabilities with respect to contracts made by the wife, except contracts between herself and husband, which were expressly excepted. Since the obligation resting upon the husband to support and maintain his wife has not been modified or abrogated by any statute, no legal contract with the wife can be entered into which will relieve him from such obligation. Nash *v.* Mitchell, *ante;* Perkins *v.* Perkins, 7 Lans 19.

The several acts, as far as they relate to the separate estate of the wife, have removed all disability with respect to her dealings therewith.

By virtue of these enabling statutes, she may carry on a sole and separate business, is entitled to all the benefits arising therefrom, and subject to all the liabilities attaching thereto. She may transact business in person, or through an agent, and she may employ her husband to act for her as such agent. Third Nat. Bank *v.* Guenther, *ante;* Knapp *v.* Smith, *ante;* Abbey *v.* Deyo, *ante;* Owen *v.* Cawley, 36 Id. 600; Baum *v.* Mullen, 47 Id. 577.

She has the power to dispose of her separate estate for any legal purpose to as full an extent as any other person possesses. In this respect the statutes have swept away the common law disabilities. Tiemeyer *v.* Turnquist, 85 N. Y. 516; Buckley *v.* Wells, 33 N. Y. 518.

This right which the statute has conferred upon her, does not authorize her to make illegal contracts, nor do they dispense with any requirement, which the law imposes, with respect to the ownership of property. It is not accurate, therefore, to say that she may deal with her property as she sees fit, or consume it in the payment of what the husband is legally liable to pay, if thereby the right of creditors are affected. As between husband and wife, she having received the benefit of the husband's services, cannot recover back from him what she has paid as family expenses under contract with him. But while the wife may not, creditors who are prejudiced thereby may, take advantage of the executed void agreement. They have the right to assume, when dealing with a married woman, that her property will not be absorbed by her husband in right of any void agreement, or that her property will be used in the payment of obligations legally resting upon him to pay, while he at the same time exhausts her estate by accumulating salary. This in part is the principle which controlled the decision in Coleman *v.* Burr, 93 N. Y. 17, and Whitaker *v.* Whitaker, 52 N. Y. 378.

Under the provisions of the act of 1860, a wife may contract with her husband, as well as with third persons, in respect to her separate property. Benedict *v.* Briggs, 34 Hun, 94. Thus, it has been held that she may employ him as her agent to transact any or all of her business, Fairbanks *v.* Mothersell, 60 Barb. 406; she may contract with him to work for her by the job or otherwise at a stipulated price, Id; she may take title to personal property, directly from him, by purchase for a valid consideration, Savage *v.* O'Neil, 42 Barb. 374; affirmed, 44 N. Y. 298; Brace *v.* Gould, 1 N. Y. S. C. 226; or by gift, in case no rights of creditors are affected thereby, Mack *v.* Mack, 3 Hun, 323; Rawson *v.* Penn. R. R. Co., 48 N. Y. 212; Reed *v.* Gannon, 50 Id. 345; she may maintain an action at law upon a claim assigned to her by her husband, Seymour *v.* Fellows, 77 N. Y. 178; and it has been held that a promissory note given by a husband to his wife in consideration of her releasing her inchoate right of dower in real estate, by joining in a deed, and without intent to defraud his creditors, is valid. Brooks *v.* Weaver, 3 Alb. Law J. 283. So it was also held valid where the consideration of the note given by the husband was in part the wife's services and in part the services of their minor son. Id.; Benedict *v.* Driggs, *ante.*

In this case an action was brought upon a promissory note made by the defendant payable to his wife or bearer who died intestate. The plaintiff is the sister of the deceased, and had possession of the note a short time preceding the death of the payee. It was transferred to her for money loaned to the payee at different times. And it was held that, as the note purported to be given by the husband for a valuable consideration received from his wife, it was valid and enforceable by her, and equally so by the plaintiff, without regard to what consideration the latter had paid therefor.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

The note was not a nullity by reason of the inability of husband and wife to make a contract of that nature with each other.

In Kelso *v.* Tabor, 52 Barb. 125, it was held that it is only in relation to the control and management of such property as a married woman may acquire under the provisions of the statutes of 1848, 1849, that her incapacity to make contracts has been removed by these acts. In all other respects, her incapacity by reason of the marriage relation remains unchanged as it was at common law, before these statutes were enacted. The powers conferred upon married women, by these statutes, are in derogation of the common law, and are, therefore, to be strictly construed; they are not to be made, by construction, to extend to any object or purpose beyond that of managing the estates by the persons intended to be benefited. The note of a married woman, which would be otherwise void as a contract, is not validated and made binding by the insertion in it of a direction or charge that the indebtedness therein created may be charged upon her separate estate. Consequently, a promissory note, given by a married woman as surety for her husband, and for his liability on a bond given by him as deputy sheriff to his principal, and for defalcations on account of moneys collected by him as such deputy, is not binding upon her at law, notwithstanding it is expressed in the note, "and she hereby charges her separate estate with the payment of this note." Nor is there any liability in equity arising upon such a consideration. Id.

But where a married woman, having separate estate, endorsed her husband's promissory note as his surety without consideration, and without benefit to her separate estate, but which endorsement expresses that, for value received, she thereby "charged her individual property with the payment of this note," it was held, in Corn Ex. Ins. Co. *v.* Babcock, *ante*, that an action on such endorsement is maintainable. See Carpenter *v.* O'Dougherty, 50 N. Y. 660; Maxon *v.* Scott, 55 Id. 274; Manhattan B. & M. *v.* Thompson, 58 Id. 80; Third Nat. Bk. *v.* Blake, 73 Id. 260; Loomis *v.* Ruck, 56 Id. 462; 74 Id. 82.

In Woodman *v.* Penfield, .53 Hun, 638, it was held that a transfer of property between a husband and wife is valid and will be upheld when made in good faith and founded upon a sufficient consideration. See Woodworth *v.* Sweet, 51 N. Y. 8; Benedict *v.* Driggs, *ante*.

It was held in Jacox *v.* Caldwell, *ante*, that, where a husband, married prior to the acts of 1848, declined to assert his marital rights to the personal property of his wife, but borrowed money from her with the understanding and agreement that it shall be repaid, the agreement is for a good consideration, and imposes an equitable obligation upon the husband; and that there is no ground for a distinction between cases where, at the time of marriage, the property is money in the possession of the wife, or where it consists of choses in action. At common law all the personal property of the wife vested absolutely in the husband at the moment of marriage, and all she acquired during coverture immediately became his property.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

This was equally true in respect to her choses in action, as any other species of her personal estate. And when they were reduced into the husband's possession, there was no greater equitable consideration for a voluntary appropriation of the proceeds to the use of his wife, or his promise to do so subsequently, than of any other personal property owned or acquired by her of which he had possession.

In Newton v. Manwarring, 56 Hun, 645, on a settlement of accounts between defendant and her husband, the latter agreed to procure the assignment to her of a mortgage, on land formerly owned by him and which had been sold subject to said mortgage, in payment of what he owed her. And it was held that, whatever may have been the intent on the part of the husband in making these settlements with his wife for money and property theretofore received of her and in acknowledging an indebtedness to her of a sum nearly equivalent to the amount due upon the mortgage assigned to her, a subsequent mortgagee is not in a situation to allege that such settlement, and the transfer of the mortgage in payment of the sum found due, was fraudulent and void because made to hinder and delay the husband's creditors. Allyn v. Thurston, 53 N. Y. 622; Briggs v. Austin, 55 Hun, 612. As the said mortgagee was not a creditor of the husband, he can derive no aid from the doctrine laid down in Coleman v. Burr, 25 Hun, 240; affirmed 93 N. Y. 17. In that case, the plaintiff was a judgment creditor of the husband, and his action was brought to set aside a conveyance made by the husband to his wife, on the ground that such conveyance was without consideration and was executed with the intent to defraud the husband's creditors.

If the wife was only entitled to hold the mortgage as a security for the loans and advances of money or property to her husband actually made, she was entitled, as he had voluntarily agreed to pay interest thereon, to hold the same for the amount of the principal and the interest as well. And even though the plaintiff was in the position of a creditor challenging the settlement between her and her husband as fraudulent, still, if the debts were valid and the claims were honest against the husband, his agreement to pay interest thereon and allowance thereof in the settlement with her would be valid. Newton v. Manwarring, ante; Spencer v. Ayrault, 10 N. Y. 202. The money and property which the husband received from the wife was upon an agreement that the husband should pay her for the same; and, according to Jacox v. Caldwell, ante, the agreement is for a good consideration, and imposes an equitable obligation upon the husband. And where a preference to the wife, in an assignment for the benefit of creditors, was made in good faith without an intent to defraud, it is valid and does not vitiate the assignment. Id.

In Sherman v. Scott, 27 Hun, 331, the husband and wife entered into an oral agreement by which the husband agreed to procure certain real estate to be conveyed to her, and she agreed to execute to him a lease thereof for the term of his life, and also to make a will devising the residue to him in

case he should survive her; and in case he should not survive her to give certain legacies to persons named and devise the residue of the property to other persons. The land was conveyed to the wife, and she executed the lease as agreed, but never made the will, though she recognized the obligation to do so. The husband survived his wife, and thereafter assigned the cause of action upon the said agreement to one of the persons who was to have been a legatee under the proposed will. And it was held that the assignee could maintain an action against the heirs-at-law of the wife to compel the specific performance of the agreement.

In Rawson *v.* Penn. R. R. Co., 2. Abb. N. S. 220, it was held that, under the statute of 1862, the common law rule that a wife cannot take by gift directly from her husband without the intervention of a trustee, was abrogated, and that she could maintain an action for the loss of articles of personal property, which she had acquired in this manner. This case was affirmed on appeal to the court of appeals, 48 N. Y. 212.

It has been held that a transfer of personal property directly from the husband to the wife in payment of a debt which he owed her when she held a separate estate, was valid. Brace *v.* Gould, *ante;* Clunder *v.* Lynch, 4 Keyes, 461. Of a like import is Savage *v.* O'Neil, *ante*, where it was distinctly held that a wife can enter into contract for the purchase of personal property from her husband, and after delivery can hold it by a strictly legal title.

It has been frequently held that the husband has the right, and owes the duty, to pay to his wife an obligation arising for loaned money and that he can prefer it in a voluntary assignment for the benefit of his creditors. Id.; Schaffner *v.* Benton, 37 Barb. 45; Wolfe *v.* Security Fire Ins. Co., 39 N. Y. 49; Woodworth *v.* Sweet, 44 Barb. 268; 51 N. Y. 8; McCartney *v.* Welch, 44 Barb. 271; Jacox *v.* Caldwell, 37 How. 241; Winans *v.* Peebles, 32 N. Y. 423; Borst *v.* Spelman, 4 Id. 284; Babcock *v.* Eckler, 24 Id. 623; Livingston *v.* Livingston, 2 John, Ch. 537.

The payment of such a debt by the husband is not void in such a sense as to leave the title to the money paid in him; and the same must be true if payment is made in any other property. After property is transferred and delivered to the wife by the husband in payment of notes held by her against him, it belongs to her, and she holds it by virtue of the statutes of 1848, 1849, and the laws amendatory thereof, by a strictly legal title, good against her husband and all his creditors. A wife can enter into contract for the purchase of personal property from her husband; and though such a contract will be void in law, it could, if founded upon a sufficient consideration passing from the wife, be enforced against the husband in equity. While the contract remains executory, and the husband has not delivered the property to the wife, she will have against him a merely equitable claim. But after he has delivered the property to her, she will hold it by a strictly legal title, as she holds her other separate property. Savage *v.* O'Neil, *ante.* So a wife

can loan money to her husband, and before repayment by him, she has a claim against him which she can enforce in equity, and which she cannot enforce at law, but he owes her the duty of payment; and, when he has voluntarily paid her, then she holds the money paid by a strictly legal title, as she holds her other money, and it can make no difference whether she is paid in money or other property.

An agreement by a husband to convey land to his wife, extorted by her as a condition of signing a mortgage on which to raise money with which to meet his necessities, is inequitable and should not be enforced. Carpenter *v.* Carpenter, 56 Hun, 647.

In this case, the sole consideration of the contract was the execution of the wife of a mortgage for $2,000, by which she subjected her dower right to the lien of such mortgage. Her inchoate right of dower could not exceed in value a few hundred dollars, and for this she claimed she was to receive a conveyance of lands worth $7,000. And it was held that, as the husband required the money, and the wife took advantage of his necessities to obtain the promise to convey such an agreement should not be enforced, especially where the husband offers to pay off the mortgage, which will restore the wife to her original position.

In Whitaker *v.* Whitaker, *ante*, it was held that the meritorious consideration arising out of the duty of a husband to support his wife is not sufficient, in equity, to sustain a promissory note given by the husband to the wife, as against the collateral heirs of the former.

In Boyd *v.* De La Montagnie, *ante*, it was held that a gratuitous transfer of property from a wife to her husband, induced in part by representations on his part that she was liable for a debt, for which in fact she was not liable, and made in the belief that the effect of the transfer would be to delay the creditors, or in some way to save the property, will be set aside by a court of equity; and that, in order to sustain an action for that purpose, it is not necessary to show a fraudulent intent on the part of the husband in making the representations; that a mutual misapprehension or mistake is sufficient. A court of equity will interpose its jurisdiction to set aside instruments between persons occupying relations in which one party may naturally exercise an influence over the conduct of another. A husband occupies such a relation to the wife, and the equitable principles referred to would apply to them in respect to gratuitous transfers by the wife to the husband, however it might be in ordinary business transactions, in which the wife may legally engage. When this relation exists, the person obtaining the benefit must show, by the clearest evidence, that the gift was freely and deliberately made. The burden in such case is upon the person taking the gift to show that the transaction was fair and proper. Boyd *v.* De La Montagnie, *ante;* Sears *v.* Shafer, 6 N. Y. 268; Ford *v.* Harrington, 16 Id. 285.

And the fact that the wife consented to the transfer to defraud creditors

does not constitute a defense. The parties do not stand on equal terms, and the husband cannot avail himself of the plea of *particeps criminis* on the part of the wife. Boyd *v.* De La Montagnie, *ante;* Freelove *v.* Cole, 41 Barb. 318; affirmed, 41 N. Y. 619. And even though he supposed the transfer was really made from motives of love and affection, yet, if the wife, though entertaining a sufficient affectionate regard for him to have made the transfer, was, in fact, induced to do it under the supposition of the liability, and would not have done it otherwise, and this belief was produced by the untrue statements of the husband, although he may have believed them true, the wife, within the principles above referred to, is entitled to relief. Boyd *v.* De La Montagnie, *ante.* And her legal right to a re-transfer is not impaired by the fact that she intended to give the property to her husband by will.

*Obligations in settlement of matrimonial actions.*—In Van Order, *v.* Van Order, 8 Hun, 315, a wife who has commenced an action against her husband for divorce on the ground of his adultery, entered into an agreement in writing with him, whereby, in consideration of a sum of money to be paid to her by him, she agreed to discontinue the action, to condone the adultery, to give up to him the custody of their child and relinquish her right of dower in his estate. In an action brought by her on this agreement, it was held that a wife has no power to enter into such a contract with her husband, and that the agreement to pay the money was void. The promise by the husband to pay money to his wife, in consideration of her condoning an act of adultery committed by him, is in violation of the rules of law and public policy and will not be enforced by the courts.

In Adams *v.* Adams, 24 Hun, 401, the wife left her husband and brought an action against him to procure a divorce on the ground of his adultery. After some evidence of his guilt had been given on the trial, she agreed with him to discontinue the action, without costs to either party, and to return to and live with him on condition that he should give his note for $1,000 to her father for her benefit. The note was given, the suit discontinued, and the wife returned to and lived with her husband for several years. She afterwards left him, the note was assigned to her, and she brought an action on it against the husband. It was held that the note was founded upon a good consideration and not void as against public policy; that she was entitled to bring an action at law upon the note, but that, if she could not maintain an action at law, equitable relief might be afforded her under a complaint stating the facts.

This case is distinguishable from that of Van Order *v.* Van Order, *ante.* In the latter case, it does not appear that there was any proof of adultery, or that the divorce action could have been maintained. The agreement was one for a future permanent separation, without proof of a violation of the marriage contract; and the case was well decided upon the facts.

In Bolen *v.* Bolen, 44 Hun, 362, the wife took her departure from the residence of the husband in 1885, and commenced an action against him

for a dissolution of the matrimonial bonds, for certain unlawful acts on his part. A settlement and discontinuance of that action was effected, whereby the wife undertook to return to her husband and live with him, and perform her duties as his lawful wife, and the plaintiff was to be allowed to keep his boy in his house and family as a member thereof. The husband was to and did execute and deliver to a third person a bond and mortgage for the payment of $8,000 for the use of the wife, which was to be and was assigned to her, and she now holds the same. The wife returned to the residence of her husband, but refused to permit the return of the boy, and threatened to leave her husband's house as soon as the child was brought there to reside; and in fact, when he was brought to the house to live, she left and persists in her refusal to return and live with her husband as his wife. This action was thereupon commenced to procure the cancellation and surrender of the bond and mortgage. And it was held that the husband was entitled to the relief sought.

The contract between the parties was that the wife should return to her loyalty and perform her duties to her husband for all time during her life, and permit his son to remain under his roof and constitute a member of his family, and to discontinue her action; and for all this he was to execute the mortgage in question. As he has performed and she has not, she cannot retain the mortgage.

In Dewey *v.* Durham, 19 W. Dig. 47, the plaintiff and his wife, after living together for twenty years, agreed to separate for the rest of their lives. Plaintiff agreed to pay his wife $1,000, which he did by assigning to her a bond and mortgage. She promised to give him a bond indemnifying him against her future support. After they had lived apart for a short time, plaintiff agreed that if his wife would return, she could retain the securities as her own ; and she returned accordingly and lived with him until her death. The interest on the bond and mortgage was received by her, and the principal was finally paid into the bank to her credit and controlled by her during her life ; but she never gave the indemnifying bond. And it was held that, as the contract was fully executed, the wife acquired a valid title to the securities. Her agreement to return was a good consideration for her husband's promise. Adams *v.* Adams, 24 Hun, 401; affirmed 91 N. Y. 381. Equity would have enforced his agreement prior to the Married Woman's Act of 1848. And even a mere naked gift from husband to wife will be sustained, where creditor's rights are not affected. 88 N. Y. 299; Dewey *v.* Durham, *ante.* In the latter case, it was held that the husband waived the wife's failure to give the bond of indemnity.

*Gift.*—The husband may make a valid gift of personal property directly to his wife. Armitage *v.* Mace, 96 N. Y. 539; Phillips *v.* Wooster, 36 Id. 412; Rawson *v.* The Penn. R. R. Co., *ante ;* Whiton *v.* Snyder, 88 Id. 299.

When the husband and wife are living together, a gift to the wife by the husband of chattels, at the time in his possession, and in the house occupied by both, unaccompanied by any actual change of possession, would

Capacity of Husband and Wife to Contract with, and to Sue, each other.

be clearly invalid as against creditors and purchasers. Reed *v.* Gannon, *ante*. But if the chattels were bought by the wife, and brought into the house as her property, and notoriously recognized as such, never having been there as the property of the husband, her title, in the absence of fraud would be valid, even as against creditors or purchasers from the husband, and stand upon the same footing as though she had herself made the purchases in her own name with funds given her by the husband. It does not necessarily follow that, because they are in the house which she and her husband jointly occupy, they are in his possession or legally subject to his control. Id.

The gifts and voluntary conveyances of a husband to his wife, made without fraudulent intent, at a time when he is indebted to no one, are in equity valid and effectual, and are not to be called in question in a court of equity, by his subsequent creditors. Phillips *v.* Wooster, *ante ;* Sexton *v.* Wheaton, 8 Wheat. 419; Neufville *v.* Thomson, 3 Ed. Ch. 92; Borst *v.* Spelman, 4 N. Y. 284. Subsequent indebtedness cannot be invoked to make such a conveyance fraudulent, if it was honest and free from impeachment at the time it was made. Phillips *v.* Wooster, *ante ;* Babcock *v.* Eckley, 24 Id. 630; Reede *v.* Livingston, 3 John. Ch. 500; Seward *v.* Jackson, 8 Cow. 406.

Equity has always sustained a gift from a husband to wife, when the claims of creditors were not affected, and when the gift was clearly proved. Mack *v.* Mack, 3 Hun, 323; Westerlo *v.* DeWitt, 36 N. Y. 346; Doty *v.* Willson, 47 Id. 583; Van Deusen *v.* Rowley, 8 Id. 358; Bedell *v.* Carll, 33 Id. 581; Allen *v.* Cowen, 23 Id. 502. The reason why such gifts have been held invalid in law, seems to have been derived from the common law idea that the husband and wife are one, and that her personal property becomes his by virtue of the marriage relation. So far as property is concerned, this rule no longer prevails in this state. The wife now holds her separate estate and the unity of the husband and wife does not, in law, create a union of her, with his property. Mack *v.* Mack, *ante*. There is no good reason why the law should permit a gift to a stranger, and deny it to the wife. It is now, undoubtedly, the law of this state that a husband may make a valid gift to his wife, where the claims of creditors do not intervene. Id.

The title in the wife's paraphernalia is in the husband when he has paid for the articles and furnished them. Curtis *v.* D. L. & W. R. R. Co., 74 N. Y. 116. Nor do the statutes in reference to the rights of married women and gifts of personal property from the husband to the wife affect the husband's right until a gift has been actually made and is proved. Where the evidence does not show any such gift, the right of the husband is paramount and should be upheld ; but where there is a gift, the wife may bring the action, otherwise the husband must sue. Id.; Rawson *v.* Penn. R. R. Co., 2 Abb. N. S. 220; 48 N. Y. 212; Rodgers *v.* L. I. R. R. Co., 1 N. Y. S. C. 396.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

In Tyrrell *v.* York, 57 Hun, 292, it was held that, while slight evidence of gift may suffice as to a wife's personal ornaments, an executed gift as to such things as furniture, which are in common use in the family, must be shown by delivery to the wife and possession by her. The ordinary use in the family does not show her possession.

In this case the plaintiff claimed that certain furniture was given to her by her husband in consideration of her returning and living with him after commencing an action for divorce. It appeared that she, with knowledge that the defendant had a wife living, went with him to Jersey City and was married to him there. There was no evidence that defendant was divorced from his former wife. And it was held that these facts showed that the relationship between her and defendant must have been known to her to have been illegal, and her promise to continue therein can afford no valid consideration for a contract on his part.

For an injury to or conversion of the wife's paraphernalia during coverture, the husband was, at common law, the proper party to sue, and this rule has not been changed by our statutes, except so far as the wife can, in any case, claim the paraphernalia as her separate property. Rawson *v.* Penn. R. R. Co., *ante.*

Prior to the legislation in this state in reference to the rights of married women, gifts of personal property from husband to wife would be upheld in equity, though void at common law, and such gifts could be impeached only by creditors. Id.; Graham *v.* Londonderry, 3 Atk. 393; Deming *v.* Williams, 26 Conn. 226; Borst *v.* Spelman, *ante ;* Neufville *v.* Thompson, 3 Ed. Ch. 92. In equity the property given would be treated as the wife's separate estate, and she would be protected in its enjoyment and possession, even against the interference of her husband. This estate, under the statutes of 1848, 1849, 1860 and 1862, if not absolutely converted into a legal estate, is clothed with all the incidents of such an estate and the wife is the proper person to sue and be sued in reference thereto.

A married woman, as a necessary incident to her right to acquire property and possess it, independent of the control or interference of her husband, although living with her husband, is competent to secure and maintain legal possession of property acquired by her free from the rights of persons claiming an interest therein through or under her husband. Stanley *v.* Nat. Union Bank, 115 N. Y. 122. She, under the statute, has the capacity to engage in business for herself, to acquire property and possess it free from the control or interference of her husband. When the sale of property is made while she is in possession of the farm upon which it is situated, under a conveyance thereof from a person having lawful possession and legal right to lease it, it immediately becomes subject to her dominion and control as the owner of the real property upon which it is situated and in whose cultivation and enjoyment it is employed. Id.; Knapp *v.* Smith, *ante.* She could not maintain the rights conferred upon her by law without holding that she had the lawful possession of such personal property.

Stanley v. Nat. Union Bank, *ante ;* Rowe v. Smith, 45 N. Y. 232. The law does not require a family to be broken up, or a wife to separate from her husband, to enable her to acquire and maintain possession of property lawfully owned by her.

At common law the presumption of ownership drawn from the possession of personal property utterly failed in the case of a married woman because as against her husband, asserting his marital rights, she could not own such property. Whiton v. Snyder, *ante ;* Curtis v. D. L. & W. R. R. Co., *ante.* The marriage vested in the husband the right to reduce to his possession and ownership the wife's choses in action, and gave him the title to her personal chattels at once and absolutely. Jacox v. Caldwell, *ante.* But by statute some modified ownership and control was given to the wife, though still largely subservient to the title of the husband. The familiar phrase, "bona paraphernalia," became the settled description of the wife's personal clothing and ornaments, and indicated in them a modified property recognized and protected to some moderate extent. The husband could not devise them away, and after his death the widow could hold them as against his executors or legatees, but was obliged to surrender them to his creditors, where there was a deficiency of assets. Even the presents given by him to her before marriage, such as jewels, rings and pictures, could not afterwards be saved from his creditors. The paramount title of the husband was still preserved, since he could dispose of these articles absolutely in his own lifetime. Our Revised Statutes relaxed somewhat the rule and gave to the wife surviving the husband a title to her paraphernalia, which his creditors could not assail. Curtis v. D. L. & W. R. R. Co., *ante.*

Even in equity, the wife's paraphernalia were not considered as a gift to her separate use, because that would enable her to dispose of them absolutely, which was deemed contrary to the husband's intention. But, where the articles were provided by the husband, the right of the wife, so far as it existed, rested upon the foundation of a gift. And since the wife may now take by gift from her husband as well as from others, and by purchase from any one, her separate and personal possession of specific articles must draw after it the presumption of ownership, and there is no longer any reason for making her case exceptional, or excluding her from the operation of the general rule. Her wearing apparel and ornaments, given by her husband, pass into her personal and separate possession. Whiton v. Snyder, *ante.* But as to articles of a different character such as furniture and household goods, adapted to the use of, and used by, the family generally, and in their common possession, a different rule must apply. Although specific articles may be spoken of as the wife's, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate and personal possession, remains. Such cases must stand upon their facts, and can rarely be brought within the range of a presumption of separate ownership. Id.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

Where the property is in the wife's separate and individual possessions at a time when her absolute ownership is possible, the presumption arise, that she acquired it subsequent to the act of 1848, and the party who seeks to repel it must prove the acquisition before the enactment of the statutes relating to married women, and not ask the court to presume it. Whiton *v.* Snyder, *ante ;* Savage *v.* O'Neil, *ante.* The apparent discord between the cases of Rawson *v.* Penn. R. R. Co., *ante,* and Curtis *v.* D. L. & W. R. R. Co., *ante,* exists only as to the fact of the gift. In the former case, it was said to have been established, but in the latter case not to have been established.

*To contribute to the support of the family.*—In Hendricks *v.* Isaacs, 46 Hun, 239, the plaintiff and his wife had disagreed and he was unwilling to provide for her support and that of the family. Certain moneys directed to be paid to the wife by the will of her husband's father were not immediately available after the decease of the testator. Advances thereupon were made by the plaintiff, which were used for the common benefit of the family, upon written instruments signed by plaintiff's daughter and approved by her mother, acknowledging the advance of the sum therein named from her father to be repaid from the interest due her mother, when received by her from the estate of the testator. After the decease of the wife a claim was made by the plaintiff to recover the amount of the advances, from moneys which had passed into the hands of the defendant as her administrator, and which were received under the said provision of the will. The claim was rejected by the administrator and was, under the provisions of the statute, sent to a referee, who directed the proceedings to be dismissed. On appeal from the judgment entered on the referee's report, it was held that while, at the common law, no action could be maintained upon such an agreement by the husband against the wife, he was entitled, where an agreement had been entered into between himself and his wife on a fair and just consideration, to seek redress in a court of equity. As the parties in this case resided in New Jersey, and the moneys were advanced and used there in the family of the plaintiff and intestate, the liability of the intestate and of her estate did not depend upon the construction and effect to be given to the statutes of the state of New York, but upon the statute of the state of New Jersey, relating to the property and rights of married women. And where no statute of the latter state was proved or read in the proceeding, the right of the plaintiff to maintain it must depend upon the general principles of equity which have been applied to the solution of controversies arising between husband and wife. Id.

The common law doctrine that husband and wife cannot contract with each other has not been changed in this state by legislation respecting the rights of married women. Hendricks *v.* Isaacs, 117 N. Y. 411. The entire and absolute disability of married women to enter into any legal contract, which was a stubborn and inflexible principle of the common law, has,

indeed, in some respects, been modified. She may now, under our laws, purchase real and personal property and carry on business on her own account; and, as incident to these rights, she may enter into contracts with third persons for the purchase and sale of property, or in the prosecution of her separate business, enforceable in a legal action to the same extent as though she was a *femme sole.* But the disability to deal with her husband, or to make a binding contract with him, remains unchanged. Contracts between husband and wife are invalid as contracts, in the eye of a court of law, to the same extent now as before the recent legislation. Id.; Yale *v.* Dederer, 18 N. Y. 265 ; White *v.* Wager, *ante ;* Frecking *v.* Rolland, 53 Id. 422 ; Cashman *v.* Henry, 75 Id. 103. If any exception to this principle exists, it has been created by the act of 1887.

But the doctrine of the unity of husband and wife, by which the legal existence of the wife was deemed to be merged in that of her husband, preventing them from contracting with each other as if they were two distinct persons, never prevailed in courts of equity. Hendricks *v.* Isaacs, *ante.* Courts of equity disregard the fiction upon which the common law proceeded, and are accustomed to lay hold of, and give effect to, transactions or agreements between husband and wife, according to the nature and equity of the case. This court does not limit its inquiry to the ascertainment of the fact whether what had taken place would, as between other persons, have constituted a contract, and give relief, as matter of course, if a formal contract is established, but it further inquires whether the contract is just and fair and equitably ought to be enforced, and administers relief where both the contract and the circumstances require it. This jurisdiction has been frequently exercised to enforce contracts or agreements for settlement, made between husband and wife before or after marriage, in favor of the wife, whether made with or without the intervention of trustees. It has also been exerted, though less frequently, to enforce agreements in favor of the husband for a settlement out of the property of the wife, or to charge her separate estate in his favor. Livingston *v.* Livingston, 2 John. Ch. 537; Gardner *v.* Gardner, 22 Wend. 526. But courts of equity do not entertain jurisdiction to enforce mere voluntary agreements, not founded upon any consideration, either in favor of the wife against the husband or in his favor against the wife. But if they have been consummated, and are fair and just, courts of equity will uphold the transactions, except as against creditors. Read *v.* Livingston, *ante ;* Hendricks *v.* Isaacs, *ante.*

There is no doubt that the primary obligation is upon the husband to provide for the support of his wife and their infant children ; and, as between the husband and wife, the latter is not bound to maintain her husband and children during his life out of her separate property, even though his means may be inadequate. But when the income of the wife has been applied with her consent to the maintenance of the family, she

can make no claim for reimbursement out of her husband's estate. This question was considered in Jaques *v.* The M. E. Church, 17 John. 548, and it was there held by the court of errors, reviewing the decision of the chancellor, that, where the wife agreed by parol before marriage concurrently with the making of a marriage settlement, to defray the expenses of the family establishment out of her separate estate, the husband is not only not accountable for the moneys received by him of his wife, and expended for that purpose, but was entitled also for an allowance for all advances made by him therefor.

Where the agreement entered into by the wife is, in substance, to share with the husband in defraying the expenses of himself and the family and to reimburse him for advances made by him for her under the arrangement, there is a technical consideration for her promise, in the payment by the husband to her of a gross sum of money for expenses to be applied in her discretion, which he was not bound to do under his common law obligation to support his wife and children. Hendricks *v.* Isaacs, *ante.*

There is certainly no moral reason for forbidding a wife, having a separate estate, to contribute thereout to the support and maintenance of the family or to contract to do so.

In this case the father of the plaintiff died, leaving a will, by which he gave his estate to trustees in trust, among other things to pay over a portion of the income to plaintiff's wife, " to be by her applied to the maintenance and support of herself and her issue by her present husband." Soon after the death of the testator, plaintiff and his wife separated and thereafter lived apart, and the children, excepting one, remained with the mother and were supported by her. After the separation, plaintiff made advances to his wife, upon her written promise to reimburse him from the interest when received by her out of his father's estate. Upon the death of his wife, he presented a claim against her estate for the amount so advanced. And it was held that the contract was void at law, but, being reasonable and just, was enforceable and should be enforced in equity.

*Agency.*—It is sufficient if her possession is such as the circumstances of the case permit and such as she is capable of taking and enjoying ; and, when she has done all that it is possible for her to do in this respect, it is a question of fact to be determined by a jury, whether she was, or was not, in fact, in possession of the property. Id.

That the circumstance that plaintiff's husband was employed as her agent in conducting the business of cultivating the farm after the property was acquired by the wife, is competent evidence to show the intent of the parties upon a question of fraud, has been adjudged in many cases ; but it has also been frequently decided that it afforded no conclusive evidence of a fraudulent intent. Id ; Knapp *v.* Smith. *ante;* Abbey *v.* Deyo, *ante ;* Buckley *v.* Wells, *ante ;* Woodworth *v.* Sweet, *ante.* In the last case, it was held that a wife could lawfully purchase property and carry on an independent business, employing her husband as her agent.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

It is permissible to a wife to employ her husband to conduct her business affairs, and the profits thereof inure to her benefit and not to the benefit of her husband, so long as the parties are acting in good faith, and not for the purpose of defrauding creditors. Coddington *v.* Bowen, *ante.*

In this case, it was held that the fact that a business belonging to a married woman is profitable mainly through the labor, energy and skill of her husband, who is its general manager, does not, so long as the parties are acting in good faith, make the profits liable for his debts.

The property of a debtor, by the laws of all commercial countries, belongs to his creditors. He must be just before he is generous, he must pay before he gives. Not so with his talents and his industry. Whether he has much, or little, or nothing, his first duty is the support of his family. The application of the debtor's property is rigidly directed to the payment of his debts. He cannot transport it to another country, transfer it to his friend, or conceal it from his creditors. Abbey *v.* Deyo, *ante.* Any or all of these things he may do with his industry. He is at liberty to transfer his person to a foreign land. He may bury his talent in the earth, or he may give it to his wife or friend. No country, unless both barbarous and heathen, has ever authorized a sale of the person of a debtor for the satisfaction of his debts. Id.

Since the passage of the act of 1860, there can be no longer a question that a married woman can carry on business on her sole and separate account, and that in such business she can purchase property for cash or upon credit, and that she can manage her business and property through her husband as her agent. Id.; Knapp *v.* Smith, *ante ;* Buckley *v.* Wells, *ante ;* Gage *v.* Douchey, 34 Id. 293; Merchant *v.* Brunell, 3 Keyes, 539; Draper *v.* Stouvenal, 35 N. Y. 507; Samis *v.* McLoughlin, Id. 647.

The creditors of an insolvent have no claim upon his services. They cannot compel him to work and earn wages for their benefit, and hence he does not defraud them if he chooses to give away his services by working gratuitously for another. The husband may, therefore, in the management of his wife's separate business or property, work for her, as any person might, without any compensation; and his creditors would not thereby gain any rights against the wife or her property, and would have no legal right to complain. Abbey *v.* Deyo, *ante.*

After the statutes of 1848, 1849, and independently of the act of 1860, a married woman might acquire the title to real or personal property by buying the same upon credit, and no interest therein would pass to her husband whether she had, or had not, antecedently, any separate estate. If the vendor would take the risk of payment, the transfer was perfect. Knapp *v.* Smith, *ante.* And after she had thus obtained property, she could manage it by the agency of her husband or any other, and hold the profits and increase to her separate use. Id.

In this case, it was so held, where the wife of an insolvent in 1851 bought from his assignees cattle which had been his, giving her promissory

Capacity of Husband and Wife to Contract with, and to Sue, each other.

notes for the price, and purchased the farm, for the conveyance of which she had an executory contract, which was abandoned, she mortgaging it as security for the price, and subsequently employing her husband to manage the farm, the case being free from fraud.

It certainly was not the object of the Married Woman's Acts to introduce discord in the marital relation, or to disable husband and wife from interchanging offices of mutual service and affection. Buckley *v.* Wells, *ante.* To hold that a married woman could not avail herself of her husband's agency in the transaction of her business, nor apply a portion of her property to his support if occasion required, would sanction a rule in plain contravention of the policy in which these statutes had their origin. *Id.*

In the case of Knapp *v.* Smith, *ante,* it was held that, under the statutes of 1848, 1849, and independent of the act of 1860, a woman acquiring property from a third party, during coverture, could manage it through the agency of her husband, and hold the profits and increase to her separate use. In that case, and in the case of Buckley *v.* Wells, *ante,* the husband derived his support from the property of the wife, and received no other consideration for his services ; but it was held that this did not impair her title to that, which belonged to her and never belonged to him.

The duty rests upon the husband to use his best efforts for the payment of his debts; but there is a duty which he owes alike to the public and to his family which is sacred, and that duty is, to provide for the nurture, education and support of his children. Buckley *v.* Wells, *ante.* He is said to be worse than an infidel who neglects it. In seeking employment for this purpose, he may apply to his wife, if she has a separate estate, as well as to a stranger. If the law allows her to hold property, her own at her marriage, or coming from others beside her husband and free from his control, of necessity she must be permitted to manage it herself, or she may employ others to act for her. As to such separate estate, she and her husband are as distinct before the law as though the marital relation did not exist. As to such property she acts as a *femme sole,* and may deal with her husband as with a stranger, and may, therefore, necessarily employ him and compensate him for its management. *Id.*

Since the wife holds her property as independent of the ownership and control of her husband as of a stranger, it is a manifest perversion of the laws, enacted for her benefit and protection, to declare that, when she employs her husband as her agent and entrusts the custody of her property to him, to buy and to sell, and, if possible, to get gains for her, she must thereby be considered as having made a free gift of the property to him. *Id.* But a wife, having separate property, can employ her husband as her agent. This question was distinctly settled in Knapp *v.* Smith, *ante.* What was said in Sherman *v.* Elder, 24 N. Y. 381, and which might be considered in conflict with Knapp *v.* Smith *ante,* was but the dictum of the judge delivering the opinion, and does not appear to have been concurred in by the other members of the court; and the point was not decided in that case.

But the case of Sherman *v.* Elder does expressly decide that the wife can make a valid assingment of her claims to a third person.

The court of appeals has frequently held that there is nothing in the marriage relation which forbids the wife from employing her husband as her agent in the management of her estate and property, and that such employment does not subject her property or the profits arising from such business, to the claims of the creditors of her husband. Merchant *v.* Bunnell, *ante;* Sherman *v.* Elder, *ante;* Knapp *v.* Smith, *ante;* Buckley *v.* Wells, *ante;* Gage *v.* Douchey, *ante.*

These cases conclusively establish the right of the wife to her separate estate, and that neither the same nor the profits derived therefrom, though such estate is managed by the husband as the agent of the wife, can be subjected, by the creditors of the husband, to the payment of his debts. Merchant *v.* Bunnell, *ante.* In this case it was held as in Buckley *v.* Wells, *ante,* that a married woman is entitled to the profits of mercantile business conducted by the husband in her name, when the capital is furnished by her, and he has no interest but that of a mere agent.

In Jones *v.* Walker, 63 N. Y. 612, it was held that, to charge a wife for work done upon her premises, under a contract with her husband there must be some evidence that he acted as agent and not as principal and that his contract was for his wife, upon her credit and with her consent, with knowledge that her credit was pledged, and that she is the contracting party. His agency will not be assumed without any evidence. In this case, the only evidence relied upon to establish an agency, was the relation of the parties, and the fact that the wife knew the work was in progress, and did not object. The court held that these facts, under the circumstances, did not constitute any evidence of agency on the part of the husband, or tend to prove that the work was done on the employment of the wife, and that the plaintiff should have been nonsuited. This case was distinguished from Gates *v.* Brown, 9 N. Y. 205; Fairbanks *v.* Mothersell 41 How. 274; Fowler *v.* Seaman, 40 N. Y. 592; Hauptman *v.* Catlin, 20 Id. 247.

Such is the relation of husband and wife and their mutual duty to act as the agents, each of the other, that a presumption of law would arise that the handling of her moneys by the husband was done in behalf and for the benefit, of the wife, and that she would reap all the profits and increase thereof. Abbey *v.* Ferris, 56 Hun, 642. And the burden is upon the husband to make out such a case as to defeat this legal presumption, and to establish the existence of an actual agreement between him and his wife for the borrowing of her moneys. Id.

In Lynn *v.* Smith, 35 Hun, 275, it was held that a receiver, appointed in proceedings supplementary to execution, cannot maintain an action against the debtor's wife to recover the value of services rendered by the husband in carrying on the separate business of the wife, where such ser-

vices were rendered without any express agreement on the part of the wife to pay him therefor.

The cases are numerous in which the husband resides with his wife upon her separate estate and is supported out of the proceeds thereof. The wife is not bound to support him, and, if she does so, it would be as reasonable to imply a contract on the part of the husband to pay her for his board, lodging, clothes, etc., as it would be to imply a contract on her part to pay him for the services that he may perform for her. On either hand, the services are performed, or the board and lodging furnished, by members of the same family, and under such circumstances that the law will presume that it was gratuitous and no pay was expected by either party.

But in Kingman *v.* Frank, 33 Hun, 471, an action was brought by a judgment creditor against the debtor and his wife, to reach property claimed to be applicable to the payment of the judgment. The wife owed the husband $1,040 for services rendered by him for her under an agreement by which she employed him to manage and superintend a separate business carried on by her at a stipulated price per week. And it was held that there existed a valid indebtedness owing from the wife to the husband, and that the judgment creditor could maintain the action.

This case is clearly distinguishable from the case of Lynn *v.* Smith, *ante.* Here was an express promise to pay a stipulated price per week, and the action was brought upon the express promise. The case does not conflict with the views above expressed with reference to implied contracts.

*Joint contracts.*—In the case of Fairlee *v.* Bloomingdale, *ante,* it was held that a business co-partnership between husband and wife was not authorized by the statute, and that the common law disability to so contract together still existed. This subject was again considered in the case of Graff *v.* Kinney, 1 How. N. S. 59, in which the opposite result was reached. And it came up again in the case of Noel *v.* Kinney, *ante,* where the decision in the case of Graff *v.* Kinney *ante,* was criticised and disagreed with, and the decision in the case of Fairlee *v.* Bloomingdale, *ante,* was concurred in. And in Kaufman *v.* Schoeffel, *ante,* it was held that the statutes of this state, enabling a married woman to enter into contracts and to carry on any trade or business and perform any labor or services on her sole and separate account, do not authorize or empower her to enter into a copartnership with her husband for the purpose of carrying on a trade or business.

At common law, by reason of the unity of husband and wife, they could not contract together for a business copartnership. The married woman was disqualified from engaging in business by reason of the husband. By her marriage, her person was united with that of her husband, and they thereafter were regarded in law as one person. She could not contract separate and distinct from him. As soon as the husband died, her disability was removed. In using the words, "sole and separate," in the statute of 1860, the legislature doubtless had in mind the husband, and

284        WOCDMAN *v.* PENFIELD.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

these words were intended to refer to him and to him only. It, by chapter 381 of the Laws of 1884, has now removed the disability of a married woman to contract, and she may now contract to the same extent, and with like effect, and in the same form as though unmarried; but it is expressly enacted that this act shall not affect or apply to any contract that shall be made between husband and wife, thus recognizing and continuing the construction given above to the statute. Kaufman *v.* Schoeffel, *ante.*

Business partnerships between husband and wife are not authorized by the statute of this state, and contracts in the conduct of such business are not enforceable against the wife. Fairlee *v.* Bloomingdale, *ante.* And any declaration of the wife that she sustains the relation to her husband of a partner in business is not binding upon her. Id.

Such partnership, or any partnership between husband and wife, would certainly have been impossible at common law. The rule then was that the husband and wife were one person in law. The very being or legal existence of the woman was suspended during the marriage, or at least was incorporated and consolidated into that of the husband, under whose wing, protection and cover she performed everything. This legal conclusion clearly forbade a partnership between them, which can only exist between persons having a separate legal existence and the one capable of contracting with the other. Id.

In a partnership, there can be no separate property and business, and the labor performed by one partner in connection therewith cannot possibly be on the sole and separate account of the partner performing it. There must be in every such case necessarily a joint, and not a separate, property and business, and services on joint account, and not on the sole and separate account of one partner.

It is very clear that the legislature has not authorized and does not contemplate a business partnership between husband and wife. And the court of appeals explicitly declares that these statutes do not cover and include a partnership between them, and that they touch a married woman in her relation to her husband only so far as they relate to her separate property and business and the labor she may perform on her sole and separate account; while in all other respects, the duties and responsibilities of each to the other remain as they were at common law. Coleman *v.* Curr, 93 N. Y. 17 ; Fairlee *v.* Bloomingdale, *ante.* If the relations between husband and wife are only changed by the statutes so as to allow her to own a separate property and conduct a separate business, and to receive the earnings from such separate property and business and from the labor she may perform on her sole and separate account, a partnership between the two cannot exist. In such case, the property, business and labor must always be joint and not separate ; and because they are joint and not separate, and therefore not covered by the statute, the relations of husband and wife remain in regard thereto as at common law, which forbade a business partnership between them. Id.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

In Noel *v.* Kinney, 15 Abb. N. C. 403, it was held that, at common law, the unity of husband and wife precluded the existence of a co-partnership between them, and this disability has not been removed by the enabling acts of 1848, 1849, 1860 and 1862 ; and that a married woman cannot, therefore, be held upon a note signed by her husband in the name of a firm composed of her husband and herself.

But when this case went up to the court of appeals, 106 N. Y. 74, it was held that, where a wife authorizes her husband to contract in matters relating to, and for the benefit of, her separate estate, and, in executing such a contract, to use the name of a firm ostensibly composed of herself and her husband, she is liable upon an obligation so executed ; and this, without regard to the question as to whether such a firm in fact exists, or as to whether as matter of law they were. capable of assuming the relation of co-partners.

If it is the present rule of law, that a husband and wife cannot be partners, and that a contract, which is in form a co-partnership contract, cannot been forced against her, then the statutes which enabled the woman to acquire and hold property, to bargain, sell, assign and transfer it, to carry on any trade or business and perform any labor or service on her own account, and which protect her in the enjoyment of her earnings from her trade, business, labor or services, and permit her to use and invest these earnings, are effectual only so far that she may alone or jointly with any person or persons other than her husband derive profit and increase from her work and gain from the use of her estate. If they are to be so limited in her favor, they may easily become, not merely enabling statutes for her benefit, but also, in her hands, instrumentalities of fraud.

There is no case in the court of appeals where a woman has successfully asserted her coverture as a defense to an action for the price of goods purchased by her ; and there is no reason why, as against creditors, she should be permitted to interpose the mere form of her promise as an obstacle to a recovery. It is settled that the things which the statutes permit her to do in person, she may also do by another as her agent. This is necessarily so, for she is allowed to act in respect to them as though unmarried ; and it cannot be doubted that the improvement of her land or the management of her personal property whether for preservation or business, may be conducted by her by means of any agency which any other owner of property might employ, and that the produce and increase thereof will be hers. Id. ; Knapp *v.* Smith, *ante;* Abbey *v.* Deyo, *ante.* So she may do these things through her husband as her agent. Id; Rowe *v.* Smith, *ante.* She may also have such a community of interest with him in relation to real estate as will render her liable for his frauds relating to it; and, when he, professing to act as her agent, makes false representations, though without her knowledge, and she receives the proceeds, she cannot retain the fruits of his frauds. Krumm *v.* Beach, 96 N. Y. 398.

As to all contracts relating to her separate estate, or made in the course

Capacity of Husband and Wife to Contract with, and to Sue, each other.

of a separate business, she stands at law on the same footing as though unmarried, and can make negotiable paper which will be governed by the law merchant, and can be sued upon in the ordinary way by general complaint, and without special statements. Frecking v. Rolland, *ante*. And she cannot escape liability because she and her husband are joint makers of the note. In the case last cited, the action was on a joint promissory note signed by the husband and wife. He set up usury and she set up coverture.

The husband in this case, acting for himself and as agent for his wife, borrowed money with which to pay for a factory bought by her. The money was loaned to them, and was in part so applied. The note sued on was given for the money loaned and for services. The court held that the capacity of a married woman to make contracts relating to her separate estate, is incident to the power to conduct it ; the latter would be barren and useless, if disconnected with the right to conduct it in the way and by the means usually employed. She became, in this case, a joint contractor with her husband, but she was as much bound to perform the joint engagement, as though the undertaking had been several, and she did not escape liability because her joint contractor was her husband.

It can make no difference in the measure of liability that in one case a married woman enters in her own name and her husband in his name in the execution of a joint obligation, and in the other case adopts a name which represents a joint liability, which may in effect also be several. Partners are at once principals and agents—each represents the other—and if, in the relation of partnership, there are obligations which a married woman cannot enforce against her husband or the husband against the wife, they involve no feature of an action, which asserts only the obligation of a debtor to discharge her debt, or the obligation of a promiser to fulfill her promise.

In Scott v. Conway, 58 N. Y. 619, an action was brought for the price of labor and materials supplied to a theater carried on by Sarah G. Conway and her husband, Frederick B., under the name of Mrs. F. B. Conway's Brooklyn Theater. The wife and husband were jointly interested. And it was held to be no defense against one who dealt with her in ignorance of the partnership, that she had a dormant partner and that the rule was not changed by the fact that the partner was her husband.

In Bitter v. Rathman, 61 N. Y. 512, it was held that a married woman, who in secret trust for her husband becomes a member of a co-partnership, is to be regarded as the owner of the interest she represents, and can maintain an action for the dissolution of the co-partnership and for an accounting ; and that, having suffered herself to be regarded by the public as a partner, she was liable as such to the creditors of the ostensible firm, though it may be otherwise in respect to her husband and his creditors. By becoming a partner either with a husband or another person, a married woman loses no right of property. And no principle can be suggested

# WOODMAN *v.* PENFIELD. 287

Capacity of Husband and Wife to Contract with, and to Sue, each other.

upon which her estate can be increased at the expense of creditors, nor how, either in her own name, or in her own name with that of another, or with another, she can purchase goods on credit to the advantage of her separate estate and not become liable for its payment. In the case of Noel *v.* Kinney, *ante*, the wife was as capable of contracting as though she had been unmarried, and adding to her estate by fresh acquisitions, and she was not permitted to escape payment or performance by joining to her own name that of her husband, or by combining the two into a firm or partnership name. It was by that name she chose to contract, and as between herself and creditors she is bound by it. Individuals may be liable as partners to third persons, while as between themselves they are not so liable. In this case the question is not between husband and wife. Though as to and with him she has no capacity to form a co-partnership, it by no means follows that she shall not be held upon a contract, made by him upon a consideration moving to her, where a third person, who parted with that consideration in reliance upon her husband's apparent, and which turns out to have been a real agency, seeks to enforce the contract. If the adoption of a firm name is a mere contrivance to carry on the business jointly, and at the same time put the property acquired and added to the wife's separate property out of the reach of creditors dealing with either *bona fide* as the partner of the other, it ought not to be permitted to have that effect. But if the wife is the sole owner of the property, and the husband has no interest in it, but for convenience they are doing her business in a firm name, her liability for a debt contracted in that name is entirely consistent with the fact, if it is a fact, that as between the parties themselves no partnership exists. If the arrangement is invalid only as between the husband and wife, the latter, who receives the profits of the transaction, cannot as against a creditor assert its invalidity. Though married she may be estopped by her acts and declarations in any matter in respect of which she is capable of acting *sui juris.* Noel *v.* Kinney, *ante;* Bodine *v.* Killeen, 53 N. Y. 93. If by reason of any technical incapacity the husband and wife cannot contract with each other, or together as constituting that artificial entity, a firm or co-partnership, she is liable and the contract enforceable against her in favor of a creditor whose property has been added to her estate upon the strength of a promise made in her name by her authorized agent.

In Jacquin *v.* Jacquin, 15 Abb. N. C. 408, note, the husband brought an action against his wife for an accounting between them in a business partnership. He married her some time after they had become partners in business, and she thereupon took all the partnership property, refusing to account for any portion. The defense was that, as the parties were husband and wife, there could be no legal partnership between them.

And it was held that the enabling statutes, in relation to the authority of a married woman to hold property or transact business, have not expressly authorized her to enter into partnership with her husband, and no

Capacity of Husband and Wife to Contract with, and to Sue, each other.

such authority or right is implied. Where the marital relation exists between plaintiff and defendant, there is no authority for the husband to claim, under a business co-partnership with his wife, the right to a dissolution of the same, and the appointment of a receiver. In the absence of any statutory enactment, the rule of the common law in relation to husband and wife remains unchanged ; and as no express provision is made by statute for a business co-partnership between them, the old rule must prevail.

A married woman who contracts a debt with her husband in a business carried on for their joint benefit, cannot avoid liability for it on the ground of coverture. Suau *v.* Caffe, 122 N. Y. 308. The second section of chapter 90 of the Laws of 1860 provides that a married woman may carry on any trade or business on her sole and separate account. This language is broad enough to authorize married women to engage in business as partners or jointly with others and even with their husbands. A contrary construction is too narrow and fails to express the evident intent of the legislature, which was not to prescribe the mode in which married women could carry on their business, but to free them from the restraints of the common law, and permit them to engage in business in their own behalf, as free from the control of their husbands as though unmarried. Before this statute, the profits of their business belonged to their husbands, and the words " sole and separate account " were intended to convey the idea that the beneficial interest of any business, in which they might engage, belong to them and not to their husbands. Since the enactment of this statute, it has been held that husbands and wives may legally contract with each other in reference to their separate estate; Id.; Owen *v.* Cawley, *ante ;* Bodine *v.* Killeen, *ante ;* that they may become agents for each other ; Knapp *v.* Smith, *ante ;* and that a husband may assign to his wife a chose in action. Seymour *v.* Fellows, *ante.*

Partners are agents of each other and are joint and severally liable for the debts of the firm. These are two of the essential elements of a contract of partnership. Since husbands and wives may be the agents of each other, and may bind themselves by joint contract entered into with third persons ; Frecking *v.* Rolland, *ante ;* Scott *v.* Conway, *ante ;* Bitter *v.* Rathman, *ante ;* Noel *v* Kinney, *ante ;* there is no warrant in the statute for exempting them from liability to creditors for debts incurred by firms of which they are members. It has been so held in Graff *v.* Kinney, 37 Hun, 405, affirming 15 Abb. N. C. 397; Zimmerman *v.* Erhard, 8 Daly, 311; affirmed 83 N. Y. 74; opposed to these are Chambovet *v.* Cagney, 3 J. & S. 474; Kaufman *v.* Schoeffel, *ante ;* Fairlee *v.* Bloomingdale, *ante ;* 14 Abb. N. C. 341; reversed in 38 Hun, 220.

Upon principle and authority, therefore, when a husband and wife assume to carry on a business as partners and contract debts in the course of it, the wife cannot escape liability on the ground of coverture.

The provision of chapter 281, Laws of 1833, which provides that "no

person shall transact business in the name of a partner not interested in his firm ; and when the designation 'and Company,' or '& Co.,' is used, it shall represent an actual partner or partners," is highly penal and will not be extended. Zimmerman v. Erhard, 83 N. Y. 74. It was intended to prevent the use of the name of a person not interested in the firm and thus inducing a false credit to which it was not entitled ; Wood v. The Erie Ry. Co., 72 N. Y. 196; but it does not apply to, and is not intended to include, the use of a real name of an actual partner, even though such partner was under a disability at the time. The use, therefore, of the name of a *femme covert*, as one of a firm, where there was no intention to impose upon the public by obtaining undue credit, can not be regarded as a violation of either the letter or the spirit of this statute. Zimmerman v. Erhard, *ante.* The name used in such case is a real one, and the words " & Co." are in no sense fictitious or unlawful within the meaning of this provision. Whether a married woman can, or cannot, be a partner of her husband, it is quite obvious that such disability is not available to a debtor upon the ground that the words " & Co." does not represent a real party, and constitutes no defense to the claim of the husband and wife against him.

*Joint ownership.*—A note payable to husband and wife jointly belongs to the wife as survivor. Sanford v. Sanford, *ante;* Borst v. Spelman, *ante ;* Draper v. Jackson, 16 Mass. 480. This is so, though the consideration is paid by the husband, if there are assets sufficient without this money to pay creditors. Sanford v. Sanford, *ante ;* The R. C. Orphan Asylum v. Strain, 2 Bradf. 34; Scott v. Simes, 10 Bosw. 314; Schoonmaker v. Elmendorf, 10 John. 49; Craig v. Craig, 3 Barb. Ch. 78.

Taking the note in the name of himself and wife shows that the husband intends thereby to give it to her, in case she survives him, and the delivery to her is unnecessary to perfect the gift. Sanford v. Sanford, *ante.* During the life of the husband the note is subject to his control and disposition. The wife has no legal interest in it until his decease. Id.

Where a party loans money and takes a note therefor payable to the order of himself and wife, it constitutes a gift of the note to the wife, if it remains unpaid in the hands of the husband at the time of his death and the wife survives him. Sanford v. Sanford, 58 N. Y. 69.

In Gelster v. The Syracuse Sav. Bank, 17 W. Dig. 137, it was held that, where a husband and wife have a bank account in their two names, and each draws and deposits money in the absence of the other, the husband is presumed in the absence of evidence, to own half, at least, of the sums standing to their credit.

The principles laid down in the case of Sanford v. Sanford, 45 N. Y. 723; 58 Id. 72, and reiterated in the case of Bertles v. Nunan, 92 N. Y. 152, and which have obtained since the existence of the common law, establish that a bond and mortgage executed to husband and wife becomes the property of the wife on the death of the husband. Matter of Albrecht, 56 Hun, 650.

19

Capacity of Husband and Wife to Contract with, and to Sue, each other.

In the Matter of Brooks, 5 Demorest, 326, at the time of decedent's death, there was on deposit, in a savings bank, to the joint credit of himself and wife, a sum of over $1,900. This amount the widow, after her appointment as administratrix, withdrew from the bank, and included one half of it, less $150 set apart for her benefit, in an inventory of decedent's property. And it was held that an exception to a finding that the amount of the deposit was the joint property of decedent's estate and his widow, and that, in the absence of evidence as to the respective proportions, the latter was accountable, as administratrix, for only one half thereof, should be overruled.

It was held, in Rom. Cath. Orphan Asylum *v.* Strain, *ante*, that a deposit of moneys in the joint name of husband and wife, with the privity of the husband, must be taken as *prime facie* a gift of such moneys to the wife, in the event of her surviving her husband; and that, where such deposits had been left undisturbed by the husband, the moneys became on his decease the property of his wife.

The doctrine of this case was repeated by the supreme court in Platt *v.* Grubb, *ante*. The moneys on joint deposit which were there held to become the property of the wife, at the death of her husband, were distinctly found to have belonged, before the making of such deposit, to her husband alone. And the court held, that, by reason of the unity of husband and wife in the view of the law, an obligation taken in the names of both inures to the benefit of both, and the whole goes to the survivor. This old rule of law is still prevalent in this state. Bertles *v.* Nunan, *ante;* Sanford *v.* Sanford, 45 N. Y. 723; 58 N. Y. 72.

In the latter case, the court of appeals held that, where a husband had loaned money, the taking by him of a promissory note for its payment to the order of himself and his wife, imported a gift to his wife, in case she should survive him. Upon the second appeal, it was further held that the fact that the widow gave the note to the appraisers as a part of her husband's estate, while it is evidence tending to show that she had released to him her right of survivorship, is not conclusive, and does not stop her from claiming the note, in the absence of evidence that the position of any party has been changed in consequence, or that any transaction was had in reliance thereon.

There is nothing at variance with the principle governing this case in the decisions of Mulcahey *v.* The Emigrants' Ind. Sav. Bank, 89 N. Y. 435; Gelster *v.* The Syracuse Sav. Bank, 17 W. Dig. 157; Syracuse Sav. Bank *v.* Hess, 23 Id. 280.

*No new powers conferred upon the husband.*—Modern statutes in this state have wrought some changes in the relationship between husband and wife. The incapacity of a wife to make contracts has, to some extent, been removed by these statutes. Perkins *v.* Perkins, 7 Lans. 19. But except to the extent that this incapacity has been removed by statute, the marriage relation, in its oneness of unity, remains unchanged, as it was

at common law before those statutes were enacted. The new powers conferred on married women by these statutes are in derogation of common law, and are to be strictly construed. Id.; Graham v. Van Wyck, 14 Barb. 531. These modern statutes relate only to the control and management by married women of their sole and separate estate. As to that, the wife is to be deemed a *femme sole*. But the husband has had no new powers conferred upon him, nor has he been released from any of the duties and obligations imposed upon him. His condition in the marriage relation is unchanged, so far as regards its unity. The wife is released from no part of its unity except in so far as it is expressed in these statutes.

The statutes of 1848, 1849, on their face and in their letter, recognize the disqualification of husbands and wives to contract with each other, in the right to take and receive estates from any person other than the husband. Id. These statutes are the beginning and they continue to be a part of a new system and policy, in relation to the separate estates of married women. Id.

The recent statutes made in her behalf, not his, have, to the extent expressed therein, enfranchised her as to those rights, and to those only. They have extended no powers and conferred no new rights upon the husband. If, when her separate estate is affected, she can sue and sue alone and by them is allowed even to sue her husband, if he interferes with it to her disadvantage, they have not, certainly not in express terms, conferred the corresponding right on him to sue her. They were passed for her, not his, protection. Id.

The unity of person, created by the marriage contract between husband and wife, has been no further severed than these statutes, in express terms or by necessary implication, have effected that purpose. The duty of the husband is now as ever to labor and provide support for his wife and it has not been changed by these statutes. They have not conferred the right upon husband and wife to make contracts between themselves to that end. Id.

There are various cases holding that married women having separate estates may employ their husbands as agents to assist in managing them. But this is quite a different thing from the holding that the husband may bring an action against his wife at law for his services. Such agency may be the best way in which he may labor to support his wife, or aid in doing so. She ought not to be deprived of this aid in managing her estate. This power to make contracts existed at common law, but it was as agent, and not as an independent and separate individual. The wife might be the agent of the husband, and in that character make contracts which would bind him; and such agency need not even be expressed, but was implied from a variety of circumstances. So, now, the husband may be the agent of the wife, in regard to her separate estate, and the term "contract between them" means just this—a contract of *agency*. Id.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

In Fairbanks *v.* Mothersell, *ante*, the court made the *obiter* remark that married women may make special contracts with their husbands in regard to their separate property, and let jobs to them of particular work, such as building and the like, the same as though they were strangers. This remark was not at all necessary to the decision of this case. It was not a question between husband and wife, or whether one could enforce at law such a contract against the other. It was a mere question of agency. The wife had given the husband the job of digging a cellar and laying the cellar wall upon her separate property, and agreed to pay, and did pay, him $138 therefor. The husband employed the plaintiff to assist him, and the plaintiff supposed at the time that the husband was the owner. Afterward finding out the contrary and that the benefit and advantage belonged to the wife, he sued her, treating the husband as her agent, and so it was decided. But this case does not establish the right of a husband to sue his wife at law. This question did not arise.

In Adams *v.* Curtis, 4 Lans. 164, an action was brought by a wife against a copartnership, of which her husband was a member. The husband did not appear in the case and his copartner did not appear for him. She performed the work of the firm for which the action was brought. On appeal to the general term, the leading opinion merely held that such a contract could be made, and if made, could be maintained at law under the statute of 1862. One member of the court put his assent to the decision on the ground that the husband, not having appeared in the case, nor any one for him, there was no one to object to his being sued or to a judgment against him ; and that even if he could not be sued, his copartner was bound at all events, and he could seek contribution over from the husband. The case, on either of these propositions, is not in conflict with the view that the statutes were passed to enfranchise married women, and to protect their property, and not to protect or extend rights to their husbands.

In the case of Minier *v.* Minier, 4 Lans. 421, it was held that a married woman may maintain an action against her husband to recover moneys entrusted to him by the wife, or for lands which had been purchased with such moneys and title taken in his name. This has always been the law of equity, and the modern statutes had not extended it to actions at law. The case is subject to criticism in respect to the remark of the judge that the act of 1862 warrants the bringing of a suit both by a wife against her husband and by husband against his wife. The latter part of the sentence was not a question before the court, and is in conflict with the direct holdings of the court of appeals in White *v.* Wager, *ante*, and in Hunt *v.* Johnson, *ante*. In the last case, the court drew the distinction between an instrument made by the wife to her husband and one from the husband to the wife, even at common law.

The language of the statute of 1862, that she may sue and be sued, is broad enough, in general terms, to include all parties that are several and equal, and under no disability; but it does not include persons who are

Capacity of Husband and Wife to Contract with, and to Sue, each other.

under disability. The husband is, under the common law disability, unable to sue his wife. Perkins v. Perkins, *ante.*

This statute is not broad enough and does not divorce the husband from that disability, whatever it may do for the wife. It is not broad enough to absolve him from the liability, as well as the duty, to labor for the support and maintenance of the wife ; nor does it authorize him to sue her for his support. The marriage contract, with its liabilities, cannot be so severed by legislative or judicial construction in favor of a husband. He cannot be so released from a binding civil contract. A contract on the part of a married woman to pay her husband for services rendered to her by him personally is clearly against public policy. If the statute contained an express provision authorizing him to maintain an action against her upon such contract it would be void on the ground of its being retrospective, in its operation upon marriages solemnized before its passage. Id.

Under the statutes of 1848, 1849, it was held, in some of the reported cases in the supreme court of this state, that the husband was entitled, not only to the fruits of his wife's labor, but also to the profits and increase of any business in which she may have embarked, though carried on in her name, by the aid of her separate estate. But the court of appeals, in Knapp v. Smith, *ante,* exploded this doctrine, and put the question upon the true ground, viz.: whether, in a given case, the transaction between husband and wife is sincere and *bona fide,* or a colorable device to cheat the creditors of the husband. Gage v. Douchy, *ante.* And this is always a fact, which upon proper evidence, should be left to the jury. Id.

The statutes of this state have not improved the condition of the husband in any respect, and he cannot now, any more than he formerly could, enter into a valid contract with his wife. Id. In this case it was held that, where the wife was the owner of the farm upon which she resided with her husband, and which he carried on in her name, without any agreement as to compensation, neither the products of the farm, nor property taken in exchange therefor, can be attached by creditors as the property of her husband. It was not competent for husband and wife to make an agreement between themselves for wages, nor for the renting of the wife's land; and it should not be inferred from the want of an agreement of this nature, which cannot be enforced, that the wife consented that her husband should be the owner of the produce of the land.

In the Matter of McMaster, 12 N. Y. C. P. 177, it was held that the husband has not the legal capacity to be the surety of his wife on an undertaking on appeal from a surrogate's decree.

*Actions.*—Neither the act of 1848 nor that of 1849, contains any provision relating to the bringing of suit by married women. Alward v. Alward, Supm. Ct., Special Term, 1888. The extent to which the legislature designed to evade the common law rule by these acts was simply to confer upon married women the right to take, hold and convey their separate estate in the same manner as though unmarried. Id.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

By the act of 1860, as amended by the laws of 1862, the additional right and liability to sue and be sued in all matters having relation to her sole and separate property in the same manner as though she was sole, was conferred upon her. The court of appeals held, in White *v.* Wager, 25 N. Y. 328, that this language did not enable her to convey directly to her husband, and this decision has been acquiesced in down to 1887, when it was abrogated by express enactment. Chapter 537, of the Laws of 1887. If it required specific action on the part of the legislature to enable husband and wife to convey directly to each other, it would require similar action to authorize them to sue each other. The amendment of 1862 was repealed by chapter 245 of the laws of 1880, and in lieu thereof we now have only § 450 of the Code, which provides that " in an action or special proceeding, a married woman appears, prosecutes or defends, alone or joined with other parties, as if she was single." There is nothing in this language which can be construed to confer upon husband and wife the right to maintain a legal action against each other. Alward *v.* Alward, *ante.*

These several acts were designed for the protection of the wife and to confer upon her certain rights and privileges. It would be an unwarranted perversion of their design to hold that they confer upon the husband a privilege which was not afforded him by the common law. This was the view taken in Perkins *v.* Perkins, *ante*, as well as in White *v.* Wager, *ante.* The sound and sensible rule, which obtained at common law relating to the unity of husband and wife, has not yet been so far abrogated as to confer upon them the much coveted privilege of bringing their quarrels into a court of law. Alward *v.* Alward, *ante.*

But courts of equity will, in furtherance of the manifest intentions and objects of the parties, carry into effect a contract entered into between husband and wife, though it would be void at law; and, in order to accomplish this, it will entertain a suit at the instance of either against the other party. Id.; Shepard *v.* Shepard, *ante ;* Hunt *v.* Johnson, *ante.*

In the case of Wright *v.* Wright, 54 N. Y. 437, the commission of appeals held that a wife might maintain an action against her husband upon a promissory note, and that it mattered not in what form she brought her action.

In Wood *v.* Wood, *ante*, it was held that a wife might maintain ejectment against her husband.

In Howland *v.* Howland, 20 Hun, 472, it was held that she might likewise maintain replevin.

In Berdell *v.* Parkhurst, 19 Hun, 358, it was held that the husband might sue his wife for conversion.

In Granger *v.* Granger, 41 Hun, 638, it was held that a husband and wife might contract with each other, and that an action at law could be maintained upon a promissory note given by the latter to the former.

The general term in Schultz *v.* Schultz, 27 Hun, 26, held that a married woman might sue her husband in a civil action for assault and battery ;

Capacity of Husband and Wife to Contract with, and to Sue, each other.

but this case on appeal to the court of appeals was reversed. The decision in this case at general term is in direct conflict with those of Freethy v. Freethy, 42 Barb. 441, and Longendyke v. Longendyke, 44 Barb. 366, and was placed upon the ground that the acts of 1848, 1849, 1860, and 1862, had not only destroyed the unity of husband and wife, but had expressly conferred upon them the right to sue each other in any form of action. A reversal of this case by the court of appeals is reported in 89 N. Y. 644, and, although no opinion was written, the ground upon which the reversal is granted is made quite obvious by the reference thereto which occurs in the case of Bertles v. Nunan, ante, in which the court says : " Although § 7 of the act of 1860 authorizes a married woman to maintain an action against any person for an injury to her person or character, yet we have held that she cannot maintain an action against her husband for such an injury." No distinction is made in the section referred to, between an action for a personal injury and any other of a strictly legal nature ; and, if a wife may not bring suit for assault and battery, it is difficult to see upon what principle she may bring an action for either conversion, replevin, ejectment or to recover the amount due on a promissory note.

At common law, the husband was entitled to all the personal property and choses in action of the wife, even when the property was received from her father's estate prior to the act of 1848. Woodworth v. Sweet, ante ; Ryder v. Hulse, 24 Id. 372.

But it is well settled that a court of equity will make a settlement to the support of the wife out of any property received by the husband in her right. He might allow the wife to retain her separate estate, and, if he borrowed her money, there was a valid consideration in equity to repay it. A promise to repay money so borrowed by the husband cannot be regarded as a nudum pactum. Woodworth v. Sweet, ante ; Babcock v. Eckler, ante ; Buckley v. Wells, ante ; Savage v. O'Neil, ante.

It seems unreasonable to subject the property of the husband to liability, in causes of action induced and arising from the separate acts of the wife herself, when the husband in no way joins, and as to which he cannot control the wife. Trebing v. Better, 12 Abb. N. C. 312, note. As § 450 of the Code existed in 1877, the provisions were broad and general, and applied to all causes of action and proceedings affecting a married woman, whether plaintiff or defendant ; and the amendment of 1879 does not limit in terms the existing provisions. Id. In this case it was held to be the legislative sense that a married woman should be regarded as a single female ; but, that there might not be even a doubt suggested that her independence was not thorough and complete, the amendment was framed so that it should be understood that the joining of the husband with the wife was not only unnecessary but also improper.

It has been decided that a wife may not sue her husband for slander, nor for assault and battery, nor for wages. Berdell v. Parkhurst, ante ; Freethy v. Freethy, ante ; Longendyke v. Longendyke, ante ; Perkins v. Perkins, 62

296 WOODMAN *v.* PENFIELD.

Capacity of Husband and Wife to Contract with, and to Sue, each other.

Id. 530; Shuttleworth *v.* Winter, 55 N. Y. 625. The court of appeals held that a wife did not become liable to answer her husband's administrators for the proceeds of property disposed of by the wife without right, in the lifetime of her husband, when the property was intrusted to her, by the husband, for management and control. But on the other hand, it has been held that a wife could sue the husband for a conversion of her property. Though there is some question whether an action at law could be brought in such case, there is no doubt that a complaint which stated a conversion stated a cause of action, and that the proper relief should be given, even though it was not asked for in the complaint. Whitney *v.* Whitney, 3 Abb. N. S. 350. So it has been held that the wife may sue her husband in eject-ment to recover the possession of her property, which was wrongfully detained from her by her husband. Berdell *v.* Parkhurst, *ante.* In this case it was held that a husband may maintain an action at law against his wife to recover personal property, belonging to him, which has been forc-ibly seized and carried away by her, under a claim that it belonged to her and not to her husband.

An action by a wife may be maintained against her husband for the con-version of her property. So she may maintain ejectment against her hus-band for her real estate. Minier *v.* Minier, 4 Lans. 421; Wood *v.* Wood, 18 Hun, 350. In Berdell *v.* Parkhurst, *ante,* same case under the name of Berdell *v.* Berdell, 68 How. 102, it was held that the husband may sue his wife for taking and converting his property ; but this was an extreme case. If the husband may sue his wife in such case, she would be entitled in like case to an action against him; and the weight of authority, and the reason of the Married Woman's acts, sustain her right. Wright *v.* Wright, 54 N. Y. 437; Perkins *v.* Perkins, *ante ;* Whitney *v.* Whitney, 3 Abb. N. S. 350; 49 Barb. 319; Adams *v.* Curtis, 4 Lans. 164; Howland *v.* Howland, 20 Hun, 472.

In the latter case, it was held that a wife who has left her husband with-out good cause, and is living separate and apart from him, may maintain an action of replevin against him to recover articles of personal property belonging to her, which were left and remained in his house and possession.

The wife could maintain a suit against her husband, in equity, for the purpose of obtaining a divorce, or a separation from bed and board; to re-strain him from improper use or destruction of her separate property ; or to compel him, under proper circumstances, to provide a suitable fund for her maintenance; and in like cases; and such suits, except when otherwise authorized by statute, were to be brought by her next friend; but she could not maintain any action at law against him. Freethy *v.* Freethy, *ante.* In this case it was held that a wife could not maintain an action against her husband to recover damages for slander, and that the legislature did not intend by § 114 of the former Code, nor by § 3 of chapter 172 of the Laws of 1862, to change the common law rule as to the disability of husband and wife to sue each other at law. This section of the former Code did not au-

Capacity of Husband and Wife to Contract with, and to Sue, each other.

thorize a wife to sue her husband in any case where she did not have previously the right to do so. It provided that when the action concerned her separate property, and was brought against any other person than her husband, it was not necessary to join with him in its prosecution ; and if the suit was against him, it might be in her own name alone, without the intervention of a next friend. Id. And no authority was given to the husband, by the statute of 1862 or any other act, to sue his wife for any injury to his person or character; and the legislature did not intend to give to the wife any such action. Id.

In Longendyke *v.* Longendyke, *ante,* it was held that a married woman could not sue her husband in an action for an assault and battery.

It was held in Schultz *v.* Schultz, 2 N. Y. C. P. 282, that § 7 of chapter 90, Laws of 1860, confers in express terms upon a married woman the right to maintain an action against 'any person for personal injury, and by implication, if implication is necessary to be invoked, against her husband. And where in an action by a married woman against her husband for assault and battery the acts of the husband were in part criminal assaults, which inflicted serious injuries upon the person of his wife, her cause of action was one of pure injury to the person, and the case one in which the right of arrest is given by the Code. But this case was subsequently reversed in the court of appeals.